George GEHNER, Plaintiff-Respondent,

v.

Robert McPHERSON, Administrator of the Estate of William Backs, Deceased, Defendant-Appellant.

Elmer KOTTMEIER, Plaintiff-Respondent,

v.

Robert McPHERSON, Administrator of the Estate of William Backs, Deceased, Defendant-Appellant.

Nos. 8754, 8755.

Springfield Court of Appeals, Missouri.

July 5, 1968.

Robert B. McPherson, Greenfield, Warren S. Stafford, Neale, Newman, Bradshaw, Freeman & Neale, Springfield, for defendant-appellant.

Arkley W. Frieze, Frieze & Crandall, Carthage, for George Gehner, plaintiff-respondent.

A. D. Moore, Springfield, for Elmer Kottmeier, plaintiff-respondent.

TITUS, Judge.

We have here two cases so near akin they were ordered consolidated on appeal. The issues, as announced in appellant's brief, are whether the Circuit Court of Dade County erred (1) in refusing to open the judgments entered and permit the presentation of additional evidence because of newly discovered evidence or (2) in overruling defendant's motions for a new trial on the ground of newly discovered evidence. Defendant only entreats that "these causes should be remanded for new trials." There is no citation of authority to support the first contention and it is not pursued in any manner by argument. We

deem that point abandoned. Holt v. Queen City Loan & Investment, Inc., Mo., 377 S.W.2d 393, 400(13). Our energies, therefore, are devoted to deciding if the trial court wrongfully declined the new trial motions.

In January 1967 George Gehner and Elmer Kottmeier filed individual claims against the estate of William Backs, deceased, for the value of unpaid services and labor allegedly furnished the decedent after his 1959 "heart attack" and before he died on September 8, 1966, at age 65. By "written Order of the Probate Court of Dade County," the cases were transferred in February 1967 to the circuit court which, without a jury, separately but consecutively tried each cause on August 2, 1967. On that date Gehner had judgment "aggregating $7,072.02" and Kottmeier, in his case, was awarded $5,400.00. The administrator-defendant served as counsel for the estate at the trials and perfected an appeal in each matter to this court.

██ Mr. Backs, a bachelor farmer, resided about 3½ miles southwest of Lockwood in Dade County on his 120-acre "home place" for over 25 years before he died. He also had a place in Lawrence County and rented pasturage north of Lockwood. The "dead man's statute," V.A.M.S. § 491.010, prevented the plaintiffs from testifying in their own behalf, but did not prohibit their appearance as witnesses in the case of the other. Eleven erstwhile friends and neighbors of decedent, in addition to Messrs. Gehner and Kottmeier, testified concerning the various services plaintiffs had rendered Mr. Backs. Three brothers, one sister and a nephew of Mr. Backs lived in Lockwood or just south thereof during the times involved. None of them testified and defendant offered no evidence in either cause. The witnesses recounted that eight men, other than plaintiffs, had worked for Mr. Backs, and three so named testified at the trials.

No depositions or oral testimony were presented in connection with the after-trial motions, although three affidavits were served with each. V.A.M.R. 78.03; V.A. M.S. § 510.350. Defendant's motions and affidavits assert that before trial he had "made diligent inquiry, and industriously endeavored to discover and produce on trial * * * witnesses who worked for William Backs, but utterly failed * * * because the * * * persons questioned * * * could not remember or did not know * * who worked for William Backs, except [for] Cecil Blevins, who was dead." On August 12, 1967, (the motions and affidavits continue) defendant first learned that Morris Inman and Fred Obert worked for decedent and "Morris Inman will testify, deny and controvert the claim of George Gehner that he performed services for William Backs * * * [and] the claim of Elmer Kottmeier in that he was paid for the services he performed and deny and controvert the claim of Elmer Kottmeier that he performed services for William Backs; * * * Fred Obert will testify, deny and controvert the claim of George Gehner that he performed services for William Backs, * * * [and] the claim of Elmer Kottmeier that he performed services for William Backs." Defendant further swore that only decedent's financial records for 1966 had been located prior to trial, but that on "August 16, 1967, Grace Backs" had discovered previous records which "show that George Gehner [and] Elmer Kottmeier received payment by check from William Backs for services [they] did perform for William Backs from 1959 to 1965." Defendant's motions and affidavits also recite the "new and important evidence for defendant" had come to defendant's knowledge since the trial and was "previously unknown * * * not owing to the want of due diligence," that the "newly discovered evidence * * * is not cumulative only * * * is not merely [intended] to impeach the character or credit of a witness or witnesses" and "is so material it would probably produce a different result, if a new trial were granted * * *."

In his affidavits, Morris Inman vowed he worked as a hired hand for decedent on the "home place" from 1962 to 1965, and the

only work George Gehner had done "during that time was to help put up some hay one time; * * * George Gehner often came to William Backs' home place to loaf around." Inman said he and Cecil Blevins "did all the work on the home place and * * * when Elmer Kottmeier helped us William Backs paid me and sent me to Elmer's place to help Elmer in exchange for his labor." Fred Obert's affidavits recite that he "worked for William Backs over a period of the last 10 years of his life on his home place south of Lockwood * * * and on his place in Lawrence County, and on * * * [the] place north of Lockwood * * * that he rented; that I helped him vaccinate calves and castrate his pigs every year he had any; that I helped him repair fences * * * and store hay in his barn; that I never saw George Gehner [or] Elmer Kottmeier doing any work for William Backs."

George Gehner's counter-affidavit asserts that "to the best of affiant's knowledge and belief" both Inman and Obert were residents of Dade County for many years and were available for trial "had any effort or diligence been shown on * * * preparation and trial * * * [that the] affidavits [of defendant, Inman and Obert], even if believed, * * * would be only impeaching in nature" and the proposed evidence "would not in any probability result in a different conclusion." Gehner also stated "the only checks that could possibly be in the possession of defendant made payable to affiant * * * would be for different items of per-

sonal property sold by plaintiff to deceased" and not in payment for any services or labor claimed. The counter-affidavit concluded that "defendant has been guilty of a lack of diligence" in locating any records or checks of the decedent because he "has had full and complete access to said checks since the time of his appointment as Administrator."

The checks and financial records to which defendant alludes in his motions and affidavits were not attached thereto or otherwise made a part of the record in either cause.

■ Led by the maxim "Expedit [or Interest] reipublicae ut sit finis litium,"[1] our courts have long viewed motions for new trial on the ground of newly discovered evidence with marked distaste, and grant them as an exception and refuse them as a rule.[2] All such motions are to be examined with caution,[3] although the action of the trial court in denying a motion for new trial on the basis of newly discovered evidence will be more closely scrutinized by appellate courts than when the new trial is granted. Pearce v. Rogers, Mo.App., 15 S.W.2d 874, 875(2). The granting or refusing of the new trial for newly discovered evidence reposes, to a great degree, within the sound discretion of the trial judge, whose ruling should not be disturbed but for clear abuse,[4] and when the motion is overruled the onus probandi is cast upon appellant to display that the trial court clearly erred. Galeener v. Derris, Mo.App., 20 S.W.2d 167, 169(5). If there be doubt whether the trial court's discretion has been exercised soundly, the doubt is to be resolved in favor of the rul-

1. "It is to the advantage of the state that there should be an end to litigation," or "It concerns the commonwealth that there be a limit to litigation."

2. Davis v. Illinois Terminal Railroad Co., Mo., 326 S.W.2d 78, 86; I——— v. B———, Mo.App., 305 S.W.2d 713, 721 (10); Lindhorst v. Curtis Mfg. Co., Mo. App., 105 S.W.2d 972, 976(10).

3. Pippas v. Pippas, Mo.App., 330 S.W.2d 132, 137–138(11); Devine v. Wells, 300 Mo. 177, 254 S.W.2d 65, 67(1); In re Priest's Estate, Mo.App., 227 S.W.2d 474, 478(5).

4. Koenig v. Skaggs, Mo., 400 S.W.2d 63, 68(9); Stewart v. Manor Baking Com-

pany, Mo.App., 397 S.W.2d 722, 726(5); State ex rel. State Highway Commission of Missouri v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 25–26(9); Griffin v. Anderson, Mo.App., 369 S.W. 2d 889, 893(11); Ward v. Goodwin, Mo., 345 S.W.2d 215, 219(7); Fidelity & Casualty Co. of N. Y. v. Western Cas. & S. Co., Mo.App., 337 S.W.2d 566, 574 (5); Young v. St. Louis Public Service Co., Mo., 326 S.W.2d 107, 113(7); Smith v. Smith, Mo.App., 267 S.W.2d 704, 706 (3); Hayes v. Adams, 241 Mo.App. 560, 567, 244 S.W.2d 123, 127(6); Foerstel v. St. Louis Public Service Co., Mo.App., 241 S.W.2d 792, 796–797(4).

**316**

ing it made. Chapman v. King, Mo.App., 396 S.W.2d 29, 37(16) ; Van Meter v. Beckers, Mo.App., 42 S.W.2d 951, 954(6).

■ As stated in Lynch v. Baldwin, Mo., 117 S.W.2d 273, 276(9), and in many cases herein previously and subsequently cited, before a court can grant a new trial on the ground of newly discovered evidence, the party in whose favor the order is made must show, (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come to his knowledge sooner; (3) that it is so material that it would probably produce a different result if a new trial were granted; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be produced, or its absence accounted for; and (6) that the object of the evidence is not merely to impeach the character or credit of a witness. 66 C.J.S. New Trial §§ 101–114, pp. 290–328; 39 Am. Jur., New Trial, §§ 156–174, pp. 162–180.

Defendant's motions and affidavits recite Fred Obert and Morris Inman "would testify, deny and controvert" the claims of plaintiffs that they performed services for the decedent. If this be true, there would never be occasion for Mr. Backs to pay plaintiffs for work either by check or exchange labor. Nonetheless, defendant's motions and affidavits asseverate (as does Inman's affidavit) Kottmeier was reimbursed for services performed by exchange labor and the "newly discovered" financial records show both plaintiffs "received payment by check from William Backs for services" they performed for the decedent from 1959 to 1965. It is equally incongruous to declare Kottmeier was fully compensated for his work by exchange labor and then envision him as the recipient of checks from the decedent in satisfaction of work performed. Motions compounded of irreconcilably stated contradictions do little to excite the implementation of a court's discretion favorable to the movant.

■ "Before a party has a right to call upon the discretion of the court" to grant a new trial on the ground of newly discovered evidence, "he must have brought himself strictly within the requirements which have been laid down for such a motion. Two of these requirements are (a) that it must set forth the newly discovered evidence * * * with sufficient detail so that the court may be able to judge whether it is competent, material, not cumulative, and whether it will probably produce a different result if a new trial is granted; and (b) it must be supported or accompanied by some proof, so that the examining court will not be led into the granting of a new trial upon vague assertions which may rest upon imagination, hope, misjudgment or intentional misrepresentation * * *." E—— v. G——, Mo. App., 317 S.W.2d 462, 469(6), and cases there cited in note 11. The "newly discovered" financial records and checks were not made part and parcel of the motions or any affidavit, but conceding their existence, they are incapable of self-propulsion into evidence, and the identity of any witnesses qualified to insure their introduction and reception is unknown. Yet if such persons were available, the trial court, save for the stated conclusion as to their effect, was possessed of no clue as to the contents of the records or recitations on the checks and thus in no position to adjudge them competent and material evidence which would probably produce a different result upon a new trial. General assertions that the financial records would show plaintiffs had been paid for their services by check do not approach the dignity of the proof required to bring defendant within the requirements stated. The "motion for a new trial should set out the proposed evidence in some detail, so that its materiality and effect * * * may be factually determined. * * * The motion should be supported or accompanied by some form of proof of the facts, either within itself or by accompanying affidavits." Womack v. McCullough, Mo., 358 S.W.2d 66, 69(4, 5). No facts, only conclusions, appear in defendant's motions and affidavits regarding the purport of the financial records and checks.

■ Instead of stating facts essential to establish that defendant exercised the re-

quired diligence to discover the decedent's financial records from 1959 to 1965 in time for use at the trial, the motions and affidavits simply set forth general assertions that prior to the trial defendant and members of the Backs family "made diligent search" for them. "[F]acts showing diligence should be stated either in a verified motion or in an affidavit accompanying the motion." Womack v. McCullough, supra, 358 S.W.2d at 69(6). It is *facts* which are required [Young v. Levine, 326 Mo. 593, 606, 31 S.W.2d 978, 983(12–16)], and unsupported statements of diligence are not sufficient. Friedman v. Hill, Okla., 325 P.2d 434, 436 (3); Celina Mutual Casualty Company v. Fraley, Ohio App., 151 N.E.2d 759, 760(2); In re Eannelli's Estate, 269 Wis. 192, 68 N.W.2d 791, 802–803(14); Mickoleski v. Becker, 252 Wis. 307, 31 N.W.2d 508, 511 (5).

The cases of Van Meter v. Beckers, supra, 42 S.W.2d 951; McCartney v. Taylor Aircraft Co., Mo.App., 140 S.W.2d 95; and Foerstel v. St. Louis Public Service Co., supra, 241 S.W.2d 792, are stressed as favorable to defendant's position because the "newly discovered evidence" in each case was either in the possession of or available to the movants before trial. However, this ignores the fact the plaintiff in McCartney offered proof that although the concerned letter was among his files he was wholly ignorant of its existence until after the trial and in his affidavit recited the letter in toto to permit the court to ascertain its probable effect at a new trial. In Van Meter and Foerstel proof was presented explaining the diligence employed and the circumstances which existed to excuse presentment of the newly discovered evidence at the trials. No facts are set forth in defendant's motions or affidavits here to advise where the financial records and checks were ultimately located, and no circumstances are recounted to explain why, with due diligence, they had not been located in the six months which transpired between the time the claims were filed and the time the trials were held, yet were discovered within fourteen days after

judgments were entered adverse to the estate. These were matters the trial court had a right to know before defendant could justifiably call upon its discretion to grant his motions for a new trial.

■ An additional reason the trial court properly denied the new trials on the basis of newly discovered evidence in the form of the proposed testimony of Inman and Obert is that defendant did not show proper diligence to discover these witnesses and produce them at trial. We judicially note Lockwood, according to the United States decennial census figures, had a 1960 population of 835 [City of Ash Grove v. Davis, Mo.App., 418 S.W.2d 194, 197(7)], and we could protract this opinion with numerous observations that if plaintiffs were able to locate witnesses in a community of this size, defendant could do likewise. Such ponderings are not necessary, however, as the transcripts in these cases befoul defendant's assertions the identity of Inman and Obert, with due diligence, was not known to him or could not be ascertained until the tenth day after the trials. Irwin and Delores Hedeman, husband and wife, lived a quarter mile from Mr. Backs as his "closest neighbors." When asked at the trials "who else" she had observed "around Mr. Backs' place helping," Mrs. Hedeman testified, *"Mr. Inman stayed with him several weeks. I think he did housework mostly."* The plain implication of this is that defendant was made aware on the date of the trials Inman had been employed by the decedent, and had inquiry been made of Mr. Backs' nearest neighbor before trial, he would have come by information that Inman and Obert had been employed by the decedent, for it was Inman, according to defendant, who advised him concerning Obert.

■ The trial court, in our opinion, soundly exercised its judicial discretion in overruling and denying defendant's motions. Accordingly, it is ordered that the judgments in both cases stand affirmed.

HOGAN, P. J., and STONE, J., concur.