Retia TAYLOR, Respondent,

v.

YELLOW CAB COMPANY, a corporation, Appellant.

No. 59563.

Supreme Court of Missouri, En Banc.

March 14, 1977.

Price Shoemaker and Thomas R. Summers, St. Joseph, for appellant.

Martin M. Bauman, St. Joseph, for respondent.

BARDGETT, Judge.

Appellant, Yellow Cab Company, appealed to the Missouri court of appeals, Kansas City district, from a verdict and judgment in favor of plaintiff and against Yellow Cab of $10,000. The jury also found in favor of the other defendant, Stewart Infra Red Commissary (Stewart).

The principal issue on appeal is whether the trial court erred in failing to modify the verdict-directing instruction as to both defendants and the damage instruction in accordance with MAI 7.01 and notes on use thereof. MAI 7.01 requires the jury to deduct the amount paid to plaintiff by a joint tortfeasor from whatever sum the jury finds to be full damages for plaintiff when, as here, the money paid by Stewart was a "payment in advance" under sec. 490.710, RSMo Supp. 1975, and that statute prohibits the jury from being informed of such payment.

The court of appeals, believing this issue probably presented a conflict between a statute and a Supreme Court rule and, if so, probably involved the rule-making power of this court under Art. V, sec. 5, Mo.Const., requested this court to transfer the case

prior to opinion pursuant to Art. V, sec. 10, Mo.Const., and we did so.

On November 6, 1973, Retia Taylor was a passenger in a Yellow Cab when it and a truck of defendant Stewart collided injuring Taylor. Subsequently the liability insurance company of Stewart paid Taylor $4,944.37 as an advancement against any settlement or potential judgment in the case. No release or covenant not to sue was given by Taylor. The matter was not settled and Taylor sued both Yellow Cab and Stewart. During the trial, but out of the jury's hearing, Yellow Cab made a record of the advance payment noted. The jury was not informed of the payment.

The case was submitted to the jury against both defendants. The jury returned its verdict of $10,000 in favor of plaintiff and against Yellow Cab Company alone and in favor of defendant Stewart.

Yellow Cab filed a motion for new trial asking that the verdict against it be set aside and a new trial ordered because, inter alia, the court erred in giving certain instructions, numbers 4, 6, and 8, requested by plaintiff because they were not modified in accordance with MAI 7.01 and the revised notes on use under 7.01.

MAI 7.01 and the notes on use appearing in the bound volume of MAI 2d edition are as follows:

"7.01 Damages—Deduction for Admitted Settlement with Joint Tort-Feasor

After you have determined such sum, you must deduct _____ dollars which (*name of joint tort-feasor*) has paid plaintiff. In the event such payment is equal to or exceeds the amount of plaintiff's damage then your verdict must be for defendant.

Notes on Use

This addendum is mandatory when a plaintiff or a counterclaiming defendant has made a settlement with one tort-feasor on a covenant not to sue or a reserve clause.

When the jury finds that the prior payment is equal to or exceeds plaintiff's injuries, this instruction requires a ver-

dict for defendant. In order to avoid an inconsistency it will be necessary to add to plaintiff's verdict directing instruction the words 'for which he has not been fully compensated by (*insert name of joint tort-feasor*)' at the end of the paragraph hypothesizing that plaintiff sustained damage."

The notes on use under MAI 7.01 were revised effective July 1, 1973, and appear in the 1976 supplement as follows:

"Notes on Use [Revised]

This addendum is mandatory when a plaintiff or a counterclaiming defendant has received partial payment which the court has determined is allowable as a credit.

Two further modifications are necessary:

Add to the appropriate verdict directing instruction the words 'for which he has not been fully compensated,' to the end of the paragraph hypothesizing that damage was sustained. Delete from the appropriate measure of damage instruction the phrase 'award the plaintiff' and substitute therefor the word 'determine.'"

Section 490.710, enacted in 1972, provides: "490.710. Advance payment predicated on possible tort liability not admissible in evidence—payment a credit, when—limitation on action starts when

1. No advance payment or partial payment of damages, predicated on possible tort liability, as an accommodation to an injured person, or on his behalf to others, or to the heirs at law or dependents of a deceased person, of medical expenses, loss of earnings and other actual out-of-pocket expenses, because of an injury, death claim, property loss or potential claim against any person shall be admissible into evidence as an admission against interest or admission of liability by such party or self-insurer, or if paid by an insurer of such party, as the insurer's recognition of such liability with respect to such injured or deceased person, or with respect to any other claim arising from the same accident or event.

2. Any payments made as provided in subsection 1 of this section shall constitute a credit and be deductible from any final settlement made or judgment rendered with respect to such injured or deceased person. In the event of a trial involving such a claim, the fact that such payments have been made shall not be brought to the attention of the jury.

3. If after an advance payment or partial payment is made as provided in this section, and thereafter it is determined by final judgment of a court of competent jurisdiction that the person is not liable for an amount sufficient to satisfy the advance payment or partial payment, such person or insurer shall have no right of action for the recovery of such payment.

4. The period fixed for the limitation for the commencement of actions shall commence on the date of the last payment or partial payment made hereunder. Laws 1972, p. 1023, sec. 1."

MAI 7.01 will be referred to as a rule from time to time in this opinion.

At first blush it would appear that the rule and the statute are in conflict—the rule implicitly requiring the prior payment be made known to the jury so that the subject could be instructed on and the statute prohibiting any information from being placed before the jury with reference to the prior payment including any instruction thereon.

The practice in Missouri, both prior to MAI and at the present time, is to put evidence before the jury with respect to any payments received by the plaintiff from a joint tortfeasor as a settlement with that potential defendant and for which plaintiff gave a covenant not to sue that tortfeasor. If the jury finds in favor of the plaintiff and against the remaining defendant who is sued then the jury is to reduce the sum it finds to be full compensation by the amount of the earlier partial settlement.[1] This results in the plaintiff receiving full but not double damages from the tortfeasors. MAI 7.01 was promulgated as the instruction to be used in such a case and was prepared with knowledge of the existing procedural law on the matter. Since the tortfeasor who made the partial settlement received an agreement that plaintiff would not sue him, that tortfeasor could not be prejudiced by the jury's knowing he had previously paid plaintiff some sum of money because, not being a party at the time of submission to the jury, he would not be subject to a judgment by the jury. It seems obvious that it is to the advantage of the tortfeasor who is sued to show the prior partial settlement in evidence in order that the judgment against him would be less than if the jury were to award full compensation in that judgment.

Partial settlement settlement with a joint tortfeasor, usually represented by a covenant not to sue him, is not an advance payment or partial payment as those terms are used in sec. 490.710. The ordinary covenant not to sue constitutes a complete relinquishment of the plaintiff's claim against one tortfeasor. The advance payment or partial payment referred to in 490.710 does not cause a relinquishment of the plaintiff's claim against the tortfeasor making the payment but, to the contrary, envisages the continued existence of that claim and the continuing right of the plaintiff to sue the party making such an advance payment.

It seems obvious the enactment of sec. 490.710 serves the purpose of permitting a defendant or his insurer to assist an injured person monetarily during the pendency of a claim and also of facilitating the final settlement of damage claims without suit by removing a very real concern insurance companies have about making a partial payment without extinguishing the

---

1. In some states this is handled by the court reducing the judgment by the amount of the previous partial *settlement* rather than the jury doing so. This may be a better way to handle this situation. Using this procedure solves the problem of the jury using the evidence of the prior settlement as its basis for finding the tortfeasor who settled negligent while exculpating from liability the tortfeasor who was sued. See *DeLude v. Rimek*, 351 Ill.App. 466, 115 N.E.2d 561, 565[3] (1953), and *Tresch v. Nielsen*, 57 Ill.App.2d 469, 207 N.E.2d 109 (1965).

claim. The concern was that if the claim was not finally settled and suit was filed the plaintiff might be allowed to put the partial payment in evidence before the jury and thereby cause the jury to think that the defendant must have been at fault since otherwise he would not have paid anything at all prior to suit. And it seems reasonable to assume that insurance companies would not be willing to make advance payments if they were to be confronted with evidence of such payments being admitted before the jury and perhaps then used by the jury against the insured.

The instant case is a good example of the wisdom exemplified by the provisions of sec. 490.710. It was the codefendant Yellow Cab that wanted the jury to be told through the use of MAI 7.01 that the other defendant Stewart, who was still in the case and whose liability the jury would also pass on, had previously paid $4,944.37 to plaintiff. If the only purpose of putting the payment in advance on the record was to allow for the reduction of the verdict by that amount, then that result is reached by simply advising the court of the prior payment and the court will reduce the verdict accordingly. But if one of the reasons for putting the advance payment into evidence is to instruct that the codefendant paid plaintiff a sum of money and thereby imply that "if he wasn't negligent he wouldn't have paid but because he paid he is the negligent party", then it is being used for an improper purpose. This is precisely what the legislature sought to avoid by the evidentiary restrictions found in sec. 490.-710.

■ Thus, it is seen that where A has a claim for damages against joint tortfeasors B and C and A settles with B and gives a covenant not to sue, B cannot be prejudiced by the jury knowing in the suit of A vs. C that B paid A a sum of money. But where B makes an advance payment to A and the claim against B is not extinguished and A sues B and C, the jury's knowledge that B made an advance payment to A may well operate to the prejudice of B and to the advantage of C.

■ MAI 7.01 was not intended to be applicable in payment in advance cases where the party making the advance payment is a party to the suit whose responsibility for the injuries to plaintiff is to be determined by the jury.

The revised notes on use to MAI 7.01 contain broader language than the notes on use to MAI 7.01 in the bound volume of MAI 2d edition. Appellant Yellow Cab argues these revised notes on use include within their scope payments in advance made by a defendant, such as Stewart in the instant case, even though Stewart is a participating defendant in the trial of the case. Unfortunately, the language of the revised notes on use is arguably broad enough to support Yellow Cab's position. The court's committee on civil jury instructions will be advised of this ambiguity in order that an appropriate note can be drawn to exclude payments in advance under sec. 490.710 from MAI 7.01.

■ The court holds that evidence of advance payments or partial payments made pursuant to sec. 490.710 is not to be admitted in evidence before a jury and is not the subject of an MAI 7.01 modification. Such payments should be made a matter of record in the trial court before the judge alone and the trial court must then act in accordance with sec. 490.710, subd. 2, and reduce the verdict by the amount of such payments and enter up judgment in the reduced sum. The court did not err in failing to modify the instruction in accordance with MAI 7.01 and the notes on use thereunder.

■ There is no conflict between sec. 490.710 and MAI 7.01 and the notes on use thereunder and therefore there is no need to address hypothetical issues relating to the court's rule-making authority under Art. V, sec. 5, Mo.Const.

■ Respondent Taylor contends the advance payments should not be allowed as a credit against the instant verdict because sec. 490.710, subd. 3, provides that the party or his insurer who makes the advance pay-

ment shall have no right of action for the recovery thereof even though the judgment rendered against such party is for less than the advance payment or in favor of the party making the payment. Taylor argues that since Stewart could not recover back from respondent the $4,944.37 it paid in advance, even though the verdict was in Stewart's favor, the appellant Yellow Cab, having paid nothing in advance should not be allowed a credit for the sum paid by Stewart.

■ Section 490.710, subd. 2, provides, "*Any payments* made as provided in subsection 1 of this section *shall constitute a credit and be deductible from any* final settlement made or *judgment rendered with respect to such injured* or deceased person. . . ." (Emphasis added.) This subsection requires that the advance payments made by a joint tortfeasor be deducted from *any final judgment* rendered in favor of the person who received the advance payments on account of the injuries sustained. Its application is not restricted only to judgments against the party who made the advance payment but rather operates so as to reduce the verdict or judgment rendered in favor of the injured person who received the payments by the amount of the advance payments. In so doing the statute merely follows the general law that an injured party may have but one satisfaction for his injuries. *Vinson v. East Texas Motor Freight Lines*, 280 S.W.2d 124, 133 (Mo. 1955); *Berry v. Kansas City Public Service Co.*, 343 Mo. 474, 121 S.W.2d 825, 833 (1938).

■ The provision of subdivision 3 of the statute denying a cause of action to the party making advance payments against the party receiving them simply protects the injured party from becoming liable for repayment to the payer should the payer prevail in the trial. The law does not *require* advance payments but leaves it to the potential defendant or his insurance carrier to decide whether or not to offer them. The risk of having paid too much is left with the party making the payment. This leaves the injured party free to expend those funds without fear of being required

to repay them later should he not obtain a judgment for more than the advance payments. It also prevents an injured party from being coerced into a meager settlement out of fear of having to repay sums previously advanced.

■ In short, the prohibition against a suit for repayment is part of the legislative scheme to encourage the use of advance payments to the end that claims will be settled rather than litigated.

The court holds that the advance payment of $4,944.37 should have been deducted from the verdict of $10,000 and judgment entered for the difference in favor of plaintiff and against defendant Yellow Cab Co.

■ Next Yellow Cab claims the trial court erred in refusing to grant a new trial on the ground that Yellow Cab, subsequent to the submission of the case to the jury, discovered new evidence. It was asserted that this evidence was relevant and material to the issues in this cause. This new evidence was submitted to the court by way of an affidavit along with Yellow Cab's motion for new trial.

The gist of this evidence was that the evening before the case went to the jury, January 7, 1975, the president of Yellow Cab learned that one of the company's employees had been an eyewitness to the accident. The employee disclosed in his affidavit that he was following the cab in which Mrs. Taylor was riding and when that cab entered the intersection where the accident occurred the light was green in favor of the cab. This employee further alleged he notified the dispatcher of the need for an ambulance and, once he was assured it was on its way, left the scene of the accident. On January 7, 1975, the employee learned of the trial from the dispatcher at Yellow Cab and it was at this time that the employee informed the dispatcher of his knowledge concerning the accident.

Yellow Cab cites only one case, *Gehner v. McPherson*, 430 S.W.2d 312 (Mo.App.1968), in support of its contention that the trial court erred in refusing to sustain its mo-

tion. In *Gehner* the court set out the requisites for a new trial on the ground of newly discovered evidence. At 316, *Gehner* stated the movant must show: "(1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to want of due diligence that it did not come to his knowledge sooner; (3) that it is so material that it would probably produce a different result if a new trial were granted; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be produced, or its absence accounted for; and (6) that the object of the evidence is not merely to impeach the character or credit of a witness. (citations omitted.)"

In addition *Gehner* is informative on the scope of appellate review of motions for new trials and at 315–316 states: " . . . our courts have long viewed motions for new trial on the ground of newly discovered evidence with marked distaste, and grant them as an exception and refuse them as a rule. . . . The granting or refusing of the new trial for newly discovered evidence reposes, to a great degree, within the sound discretion of the trial judge, whose ruling should not be disturbed but for clear abuse, and when the motion is overruled the onus probandi is cast upon appellant to display that the trial court clearly erred. *Galeener v. Derris*, Mo.App., 20 S.W.2d 167, 169[5] [1929]. If there be doubt whether the trial court's discretion has been exercised soundly, the doubt is to be resolved in favor of the ruling it made."

Yellow Cab had access to this evidence before the case was submitted to the jury and did not bring it to the attention of the court until sometime after the conclusion of the trial. We cannot conclude it acted with that degree of diligence required by law. The action of the trial court in refusing Yellow Cab's motion for a new trial was not clearly erroneous. The point is overruled.

The judgment as to Yellow Cab Company is reversed and the cause remanded to the circuit court with directions to enter judgment in favor of plaintiff and against defendant Yellow Cab Company in the sum of $5,055.63 and costs as of the date of the jury verdict.

SEILER, C. J., and MORGAN, HENLEY, FINCH and DONNELLY, JJ., concur.

RENDLEN, J., not participating because not a member of the court when cause submitted.