In re the Marriage of Charles Matthew SOEHLKE and Angela Maria Soehlke, Charles Matthew Soehlke, Respondent,

v.

Angela Maria SOEHLKE, a/k/a Angela Maria Crumer–Soehlke, Appellant.

No. SC 92872.

Supreme Court of Missouri, En Banc.

May 14, 2013.

Greg L. Roberts, Thomas H. Rolwing Jr., Roberts Law Firm PC, Chesterfield, Daniel R. Schramm, Daniel R. Schramm LLC, Chesterfields, for the Mother.

Michael L. Jackson, Law Offices of Michael L. Jackson LC, Jackson, for the Father.

PAUL C. WILSON, Judge.

Charles Soehlke ("Father") sought a modification of the custody and support provisions of the judgment dissolving his marriage to Angela Crumer–Soehlke ("Mother"). Mother appeals from the trial court's judgment of modification granting some, but not all, of the relief sought by Father. The judgment is affirmed.

## I. Background

The parties' marriage was dissolved on February 15, 2005, and Father and Mother were awarded joint legal and physical custody of their only child, who was nearly three years old. The 2005 judgment designated Mother's residence as the child's primary residence for mailing and educational purposes. Parenting time was to be shared equally, with the child moving between parents each week.

At the time of their dissolution, both Father and Mother lived in southeast Missouri. However, Mother soon moved (with proper notice) to Manhattan, Kansas. Ac-

cordingly, on July 14, 2008, the trial court entered a judgment modifying the custody and support provisions of the original 2005 judgment. This 2008 judgment incorporated a new parenting plan that had been agreed to by the parties and that continued joint legal and physical custody. However, the 2008 judgment eliminated the week-to-week custody exchanges. Instead, the 2008 judgment designated Mother's residence in Kansas as the child's primary residence for mailing and educational purposes and provided that the child would reside with Father during specified periods throughout the school year, as well as longer periods during summer vacation.

On May 19, 2009, Father filed the motion to modify now at issue. Father's amended motion, filed in July 2010, alleged that a modification was justified due to Mother's numerous refusals to comply with the 2008 judgment, including: (1) her refusal to communicate with Father regarding the child's education, grades, and extracurricular activities; (2) her refusal to communicate with Father regarding the child's health, accidents, injuries, and major medical decisions; (3) her refusal to communicate with Father regarding Mother's decision to expose the child to a new religion without consulting Father; (4) her decision to permit a man who is married to a third person to spend nights at Mother's residence while the child was staying with her; (5) her decision to tell the child that she would be moving and that the child would need to change schools; and (6) her purposeful efforts to enroll the child in extracurricular activities and plan the child's other outings to conflict with the periods when the child otherwise would be staying with Father in order to limit the child's time with Father and/or undermine Father's relationship with the child. Finally, Father alleged that his work schedule and the substantial distance to the court-ordered location for custody exchanges (i.e., roughly halfway between the parties' Kansas and Missouri residences) made it impractical for the child to stay with Father for the shorter periods (three days or less) during the school year that the 2008 judgment provided.

Based upon the forgoing changes in circumstances, Father alleged that the child's best interest required modifications to the custody and support provisions in the 2008 judgment. Specifically, Father requested the court grant Father sole legal and physical custody of the child. And, in the converse of the 2008 judgment, Father requested that the child's primary residence be changed from Mother's Kansas residence to Father's Missouri residence and that the court specify that the child will reside with Mother only for short periods during the school year and longer periods during the summer. Finally, Father asked the trial court to modify the transportation and exchange provisions so that each parent would be responsible for picking the child up at the other parent's residence.

Mother conceded that the 2008 judgment was no longer workable and that some modification was in the child's best interest. At trial, Mother proposed a new parenting plan that not only would continue Mother's residence in Kansas as the child's primary residence but also would award Mother sole legal custody of the child and reduce Father's parenting time substantially.

On August 18, 2011, Father's amended motion to modify was ready to be tried. Both parties appeared in person and by counsel and announced they were ready to proceed. Father and Mother each offered evidence, both parties rested, and Father's motion was submitted. On September 14, 2011, the court entered its judgment of

modification continuing the parties' joint legal and physical custody but imposing new custody terms that essentially are the mirror-image of those in the 2008 judgment. Specifically, where the 2008 judgment had designated Mother's residence as the child's primary residence for mailing and educational purposes and specified certain times during the school year and the parts of each summer that the child would stay with Father, the September 14 judgment designated Father's residence as the child's primary residence and specified certain times during the school year and the parts of each summer that the child would stay with Mother. Finally, the court denied Father's request to modify the transportation and exchange provisions, and these continued the same in the September 14 judgment as in the 2008 judgment.

Even though the child's school year was beginning, Mother refused to comply with the September 14 judgment on the grounds that its custody provisions were "vague" because they failed to specify when—if ever—the child was to reside with Father. Seeking to compel Mother's compliance as quickly as possible, Father filed a motion on October 5, 2011, requesting that the court add language to the September 14 judgment clarifying that the child was to reside with Father at all times not specifically set apart to Mother. Father's motion was titled "Motion for Amendment of Parenting Plan Nunc Pro Tunc" and cited Rule 74.06(a) as the court's authority to make this clarification.

On October 7, the trial court entered its "Judgment and Order for Amendment of Parenting Plan Nunc Pro Tunc," which stated that the child "shall be primarily in [Father's] physical care, custody and con-trol at all times not specifically set aside under [the September 14] Parenting Plan." Attached to and incorporated in this October 7 judgment was an amended parenting plan. Other than the addition of the word "Amended" to the title, this parenting plan was identical to the one incorporated in the September 14 judgment, with the addition of the following clarification:

The minor child shall be primarily in the Mother's physical care, custody, and control during those periods set aside to Mother under the custody schedule which is attached hereto as "Exhibit 1—A" and incorporated herein by this reference. The minor child shall be primarily in the Father's physical care, custody, and control at Father's residence in the State of Missouri (or wherever Father may be), at all times not specifically set aside to Mother under the custody schedule which is attached hereto as "Exhibit 1—A."

This "Exhibit 1—A" is the list of school holidays and weekends (and longer periods during the child's summer vacations) that were set aside to Mother. "Exhibit 1—A" is identical to "Exhibit 1" that was attached to and incorporated in the September 14 judgment.

On October 12, Mother's new counsel[1] filed suggestions in opposition to Father's motion, as well as Mother's "Motion for a New Trial or in the Alternative to Amend the Judgment." Mother also filed a "notice" purporting to set her new trial motion—and her objections to Father's motion—for hearing some four weeks later, i.e., November 10, 2011.

In Mother's objections to Father's motion seeking clarification of the September 14 judgment, she argued that Father's mo-

1. Following the entry of the September 14 judgment, but prior to Father's motion seeking to eliminate Mother's "vagueness" claims and thereby implement the custody modifications, Mother's trial counsel was granted leave to withdraw.

tion presented "an improper legal theory to give the Court jurisdiction to amend the Court's findings as requested by [Father]." In addition to this procedural objection, Mother responded to the substance of Father's motion in her new trial motion. There, she argued that the child custody provisions in the September 14 judgment were "vague" and "indefinite."

Mother noted, by way of example, that the judgment specified the periods during which the child would stay with her but never specified which periods—if any—the child was to stay with Father. Mother also argued that, even though the September 14 judgment changed the child's primary residence for mailing and educational purposes from Mother's residence to Father's, it did not specifically order the child to live with Father or attend school there. Finally, Mother argued that, if the trial court had intended for the child to live at the Father's residence and attend school there, the September 14 judgment failed to specify a "date certain" by which these changes were to occur. In other words, even though she never had claimed any difficulty understanding the substantially similar (albeit converse) provisions in the 2008 judgment, Mother asserted that she was unable to determine what the September 14 judgment required and, therefore, could not comply with it.

On October 14, 2011, without waiting the four weeks suggested in Mother's notice, the trial court overruled Mother's motion for a new trial. Mother timely filed her notice of appeal and, after this Court granted Mother's application to transfer the appeal pursuant to Rule 83.04, this Court has jurisdiction. Mo. Const. art. V, § 10.

## II. Guardian Ad Litem

Mother raises three points of error in this Court.[2] First, Mother claims that she is entitled to a new trial because the trial court failed to appoint a guardian ad litem under section 452.423. This statute provides, in pertinent part:

1. In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, *the court may appoint a guardian ad litem . . . .*

2. *The court shall appoint a guardian ad litem in any proceeding in which child abuse or neglect is alleged.*

§ 452.423, RSMo Supp. 2012 (emphasis added).

The language of section 452.423.2 is plain and unambiguous: An appointment of a guardian is mandatory only when allegations of child abuse or neglect are raised in one or both parties' pleadings. *Rombach v. Rombach,* 867 S.W.2d 500, 503 (Mo. banc 1993). However, because of the importance of protecting children from abuse or neglect, "if sufficient evidence [is offered at trial] that, if believed, shows actual abuse or neglect occurred, the court, either upon motion of a party or *sua sponte,* should order the pleadings amended to conform to the evidence [pursuant to Rule 55.33(b)] and appoint a guardian ad litem [pursuant to section 452.423.2]." *Id.* at 504.

The best interest of the child is not merely an important consideration in modification proceedings under section 452.410, it is the trial court's central concern. In such proceedings, the provisions of section 452.423 are intended to serve the child's best interest—and only that interest. Therefore, when an appellant seeks a

**2.** Mother initially asserted four claims of error, but she later abandoned her contention that the custody terms are vague or unworkable.

new trial based on a claim that the trial court erred in applying section 452.423.2, Rule 84.13(b) prohibits the appellate court from granting a new trial unless the appellant clearly demonstrates both that the result of the trial court's failure to appoint a guardian was that the child's interest was not adequately protected at trial, and that this resulted in the trial court imposing modifications that were not in the child's best interest. *See Lewis v. Wahl*, 842 S.W.2d 82, 85 (Mo. banc 1992) ("Rule 84.13(b) forbid[s] appellate courts from reversing judgments for errors that do not *materially affect the outcome of a case* ") (emphasis added).

The application of section 452.423.2 is based on the parties' allegations, which the trial court necessarily evaluates in the context of the case. When Father and Mother jointly proposed modifications following Mother's move to Kansas, the trial court appointed a guardian ad litem under the permissive provision in section 452.423.1. But when Father filed the present motion to modify, neither Father nor Mother contacted this guardian or asked the court to renew her appointment. As a result, the former guardian wrote the trial court (and the parties) to ask either that her appointment as guardian be renewed or that she be removed from the list of attorney appearances and notifications. At trial, the court opened the record by referring to the former guardian's letter:

> This case is set for hearing today ... on an Amended Motion to Modify filed by [Father]. I have a letter here today from [the former guardian ad litem]. We did not appoint in this Amended Motion to Modify a GAL. *Nobody requested it and the pleadings didn't indicate it was necessary.* So we will

proceed on the Amended Motion to Modify. [Emphasis added.]

Mother did not object to proceeding to trial in the absence of a guardian ad litem, nor did Mother insist, either before or during the trial, that the court was wrong in concluding that Father's pleadings contained no allegations of abuse or neglect sufficient to trigger section 452.423.2. Not until Mother was faced with an adverse modification judgment did she question the trial court's findings or conclusions under section 452.423.2 as a means of securing a new trial.

When reviewing a judgment of modification, this Court will affirm if the trial court's findings are supported by substantial evidence, are not against the weight of the evidence, and the judgment does not erroneously declare or apply the law. *Speer v. Colon*, 155 S.W.3d 60, 61 (Mo. banc 2005). But the trial court's conclusions regarding the application of section 452.423.2 involve only a review of the pleadings, with no factual findings. Accordingly, this Court will review those conclusions only for an abuse of discretion. And, as noted above, even if the trial court erred in applying section 452.423.2, Rule 84.13(b) prohibits granting a new trial on this ground unless the court's error resulted in material prejudice to the child's best interest.

Here, the trial court concluded that neither Father or Mother had alleged abuse or neglect sufficient to invoke section 452.423.2. Moreover, when the trial court stated this conclusion to the parties and their counsel before trial, both parties implicitly agreed that no guardian was required under section 452.423.2.[3]

---

3. To be clear, when allegations of abuse or neglect have been made, section 452.423.2 requires the court to appoint a guardian regardless of whether a party requests the appointment or even if both parties agree that no guardian is needed. But, for Mother to

Mother concedes that she did not allege any abuse or neglect on the part of Father. Instead, her argument rests on her assertion that Father's amended motion included "a series of inflammatory allegations about Mother *that amounted to* charges of neglect or emotional abuse." [Emphasis added.] Mother further describes these "inflammatory allegations" in her brief:

> More specifically, Father alleged that Mother threatened the child with missing activities like attending Cardinal baseball games, family outings or Tae-Kwon–Do if the child spent more time with Father; that Mother frequently shared a bed with a Muslim man named Imad Khamis while the child is present [in the residence]; that Khamis supposedly had questionable morals and told the child that it was permissible for him to have more than one wife; that Mother refused to allow the child to a attend a funeral with Father's family; and that Mother generally alienated the child from Father.

Father contends this characterization is exaggerated, and he may well be correct. But, even assuming that Mother's description is accurate, such allegations do not constitute allegations of abuse or neglect sufficient to trigger section 452.432.2.

■ To justify a custody modification, section 452.410.1 requires the movant to show that "the modification is necessary to serve the best interests of the child." Therefore, motions to modify must allege facts showing that the status quo is *not* in the child's best interest. Because a mov-

ant nearly always alleges (directly or indirectly) that the respondent parent either caused or exacerbated the status quo, or at least refused to agree to changes that would have eliminated the need for judicial modification, every motion can be construed as having alleged—at least implicitly—that the respondent parent is not acting in the child's best interest. Under Mother's reasoning, however, such allegations necessarily "amount to" allegations of "abuse or neglect" and, therefore, trial courts would be obliged to appoint guardians *sua sponte* under section 452.423.2 in virtually every modification. This clearly is not what the statute intends.

There is no specific definition of "abuse" and "neglect" as those terms are used in section 452.432.2. No definition is provided in the statute, either directly or by reference to any other statute. The definitions of "abuse" and "neglect" in sections 210.110(1) and 210.110(5) may offer insight in some cases, *see Rombach,* 867 S.W.2d at 504, but those definitions are **not** controlling in the construction or application of section 452.432.2. Accordingly, the statute leaves the final construction of these terms to the experience and judgment of Missouri's trial courts, in which untold thousands of custody motions are reviewed annually. These courts need no further guidance to be able to distinguish extraordinary allegations that involve real acts of child abuse or neglect from ordinary allegations that—no matter how vitriolic or *ad hominem* they may be—do not indicate that the child has suffered such harm.

stand mute after the trial court expressly concluded on the record that there had been no allegations of abuse or neglect, only to argue after judgment was entered that Father's allegations were sufficient to trigger section 452.423.2, treads perilously close to invited error. *See Wigginton v. Rule,* 275 Mo. 412, 205 S.W. 168, 181 (Mo. 1918) ("no valid reason would appear to prevent … applica-

tion [of invited error doctrine] to self-invited error in whatever form it may have appeared"). At a minimum, such conduct reinforces the importance of Rule 84.13(b)'s requirement that an appellant demonstrate that the claimed error resulted in material prejudice before an appellate court can grant a new trial.

Under section 452.432.2, the trial court must assess the parties' allegations in the context of their case and in the light of the best interest of the child. If a party challenges the court's conclusion as to whether the allegations were sufficient to mandate the appointment of a guardian, that conclusion will be reviewed only for an abuse of discretion. Here, this Court finds the trial court did not abuse its discretion in concluding that there had been no allegations of abuse or neglect sufficient to trigger section 452.432.2. Accordingly, the trial court's failure to appoint a guardian *sua sponte* was not error.

Mother argues that, even if Father did not allege abuse or neglect, there was sufficient evidence of abuse presented at trial that the court was required, *sua sponte*, to (1) suspend the hearing, (2) declare the pleadings amended to conform to this evidence, and (3) appoint a guardian. Mother makes no attempt to identify the particular evidence that reflected prior abuse so strongly that it should have compelled the court to take such extraordinary actions. Instead, her argument is based solely on an observation that the trial court made after the close of all the evidence.

The court noted that both parties had engaged in inexcusable conduct and warned them that, if Father and Mother continued to put the child in the middle of their ceaseless quarreling, they were creating a risk that such conduct would end up harming the child. Mother contends that this statement was a "finding" that there had been credible evidence of abuse by both Father and Mother and, therefore, that the court should have stopped the hearing and appointed a guardian.

After reviewing the transcript and the context of the trial court's statement, not only does it appear that the trial court's statement was insightful and correct, it is clear that the trial court intended its remark only as an admonition, and not as a finding of fact. There is nothing to suggest that the court believed there had been evidence of abuse sufficient to trigger section 452.432.2. And the trial court expressly found in its September 14 judgment that there had been no evidence of abuse at all. Accordingly, Mother's argument is denied.

■ Finally, even if Mother had succeeded in demonstrating that the trial court's application of section 452.432.2 was error, Mother made no attempt to demonstrate the materiality of such an error as required by Rule 84.13(b). She fails to explain how the absence of a guardian resulted in the child's interest being inadequately protected or how this resulted in the trial court ordering modifications that were not in the child's best interest. At most, Mother suggests that a guardian would have sided with her in opposing Father's motion and that the guardian somehow would have persuaded the trial court when Mother alone failed.

Mother's argument must fail because it misunderstands both the role of the guardian and the purpose of section 452.423.2. The role of the guardian is solely to protect the child's interest. The guardian's purpose is not to be a "tie-breaker," there to side with one party or the other on the motion to modify, any more than the purpose of section 452.423.2 is to provide grounds for disappointed parents to seek retrial. Accordingly, under Rule 84.13(b), even if the trial court's decision not to appoint a guardian under section 452.432.2 was error, it did not result in the material prejudice to the child's best interest required before this Court may order a new trial on this ground. For all of these reasons, Mother's first point is denied.

### III. "Best Interest" Factors under Section 452.375.2

Mother's second point on appeal is that the trial court failed to consider all of the

so-called "best interest" factors under section 452.375.2 in its September 14 judgment. Specifically, Mother contends the court failed to consider section 452.375.2(5) (the "child's adjustment to the child's home, school, and community"), section 452.375.2(6) (the parents' "mental and physical health"), and section 452.375.2(8) (the "wishes of [the] child").[4]

This Court has held that "the trial court [is] required to include in its judgment a written finding based on the public policy in section 452.375.4 and the factors listed in section 452.375.2(1) to (8) detailing the specific relevant factors that [make] the chosen arrangement in the best interest of the [child]." *Speer*, 155 S.W.3d at 61. Here, the trial court's extensive written findings regarding the relevant factors were more than adequate to fulfill this obligation. For example, after noting that the parties offered "little evidence" regarding the child's adjustment under section 452.375.2(5), the trial court nevertheless found that this factor "slightly favored" Mother. This finding, and the associated discussion in the September 14 judgment, satisfies the requirements of *Speer* and section 452.375.2, and it was fully supported by the evidence before the trial court.

Regarding sections 452.375.2(6) and 452.375.2(8), the court found that neither Father or Mother had chosen to present any evidence relevant to these factors and, therefore, neither factor favored either party's position. As above, this finding complied with the requirements of section 452.375.2 and this Court's instructions in cases such as *Speer*, 155 S.W.3d at 61–62, and *Buchanan v. Buchanan*, 167 S.W.3d 698, 702 (Mo. banc 2005). This Court previously has held that, when neither party chooses to introduce evidence concerning a factor, the trial court is under no obligation to make any written findings regarding it. *Hightower v. Myers*, 304 S.W.3d 727, 735 (Mo. banc 2010) (even though judgment failed to consider statutory factor concerning the child's preferences, the "trial court still complied with section 452.375.2 *because no evidence was adduced as to this factor at trial*") (emphasis added).

Here, the trial court followed an even more prudent course by including in the judgment express findings that the parties had failed to present evidence regarding sections 452.375.2(6) and (8), and that, as a result of this evidentiary void, neither factor weighed in the court's conclusions regarding Father's burden of proof and the child's best interest. There can be no error in doing more than the law requires, and these findings accurately reflect the parties' evidence (or lack thereof).

 Mother's suggestion that the September 14 judgment must be vacated and a new trial ordered because of the absence of any evidence regarding two of the statutory factors reveals some confu-

---

4. Mother also claims that the "trial court disregarded Father's intent to relocate the child from Kansas to Missouri as a relevant consideration." Apparently, Mother contends that the trial court's finding that neither party "expressed an immediate intent to relocate the principal residence of the minor child" was not supported by the evidence in that Mother claims the "whole purpose" of Father's motion was to "uproot the child from his existing home, school and community in Kansas and relocate his principal residence to Missouri." In context, the trial court's finding was that neither parent intended to relocate his or her residence and, thus, impose a move on the child. This finding was supported by the evidence. The judgment makes clear that Father's motion sought to have the trial court change the child's principal residence from Mother's residence in Kansas to Father's residence in Missouri, but that is not the change contemplated by the factor set forth in section 452.375.2(8). Accordingly, this point is denied.

sion about the role that the factors in section 452.375.2 are meant to play. Trial courts must decide custody issues based solely on the evidence that the parties choose to present.[5] On a motion to modify pursuant to section 452.410, if the evidence persuades the trial court that there has been a change in circumstances, the trial court must order whatever modifications are in the child's best interest. The judgment must demonstrate how these modifications serve the child's best interest, and this is done by considering the evidence in light of the factors listed in section 452.375.2. Those factors are not a checklist, however, and the movant is not required to present evidence regarding every factor.

In a motion to modify under section 452.410, the only elements that the movant parent must plead and prove are that "a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410.1. The factors and policies listed throughout section 452.375 serve only to guide the court in deciding these two issues. Accordingly, this Court's instructions in cases such as *Speer* and *Buchanan* are intended only to ensure the written judgment demonstrates that the trial court considered all that section 452.375 instructs it to consider.

All of the factors listed in section 452.375 (and others) are relevant to custody decisions generally, but every factor may not be relevant to resolving every individual motion. What makes a particular factor relevant to a particular motion is the evidence. The trial court may—indeed must—presume that the movant will intro-

duce all of the evidence relating to whichever factors he or she believes will help persuade the court as to the child's best interest. Similarly, the trial court must presume that the non-movant will introduce all of the evidence relating to whichever factors he or she believes will help convince the court that the movant has failed to meet the burden of proof regarding the child's best interest. Accordingly, the statutory factors serve only to frame the debate regarding the child's best interest but do not purport to supplement or supplant that central requirement.

■ This analysis exposes the core of Mother's argument. Her main thrust is not that the trial court's findings regarding sections 452.375.2(5), (6) and (8) are insufficient, or that these findings are not supported by the evidence actually before the court. Instead, Mother contends that, if the trial court had granted her motion for a new trial, she would have been able to present **additional evidence** regarding these factors. With this additional evidence, Mother claims that the trial court would have been forced to make **different findings** concerning these factors that would have weighed so decisively in her favor that the court could not have ordered the modifications it did. This argument is rejected.

■ When both parties appear on the scheduled trial date and declare themselves ready for trial, the trial court is entitled to proceed on the assumption that the parties have exercised due diligence in preparing their cases and are ready to present all of the evidence either of them

5. Moreover, counsel should not assume it is enough simply to dump the evidence into the record and expect the trial court to sort out what evidence the parties believe should be considered with respect to which factor. Counsel should be prepared to argue, when-

ever and with whatever formality or informality the trial court desires, what evidence in the record each party believes the trial court should consider under each of the factors set forth in section 452.375.2 (and any other factors that counsel believe are relevant).

believes is necessary to resolve the issues before the court. When both parties rest, and neither seeks a continuance to allow for the introduction of additional evidence that was available but imprudently omitted, the trial court is entitled to assume that the parties are content to have the court resolve the matter on the basis of the evidence already admitted. A motion to re-open the record (or similar request) is an effort to persuade the trial court to abandon this assumption, and, therefore, such motions are committed to the sound discretion of the trial court.

Here, both Father and Mother announced ready for trial, both offered evidence, and both rested. Mother did not seek a continuance or request that the court leave the record open or give any other indication (by way of a motion to re-open the record or otherwise) that she had access to—but neglected to offer—additional evidence the court should hear before making its decision. Instead, Mother waited until **after** the trial court ruled against her before suggesting that there was additional evidence that would cause the court to change its findings and conclusions.

 To be clear, not only was the trial court permitted to decide Father's motion solely on the basis of the evidence presented, it was obligated to do so. By the same token, this Court must consider that evidence—and only that evidence—in

reviewing the trial court's findings on appeal. Evidence that a party knew about but chose not to present cannot play a role in either decision, regardless of how persuasive the aggrieved party later claims such additional evidence would be. Accordingly, Mother's second point is denied.[6]

## IV. Trial Court's Clarification of the September 14 Judgment

 As noted above, Mother refused to comply with the custody terms of the September 14 judgment, claiming that those terms were "vague." In response, the trial court modified the September 14 judgment to clarify those provisions and thereby eliminate Mother's grounds for non-compliance. Father sought this clarification under Rule 74.06(a), and the trial court titled the October 7 modification as a "Judgment and Order for Amendment of Parenting Plan Nunc Pro Tunc." In Mother's final point on appeal, she argues that this Court must strike this clarification from the judgment because the trial court's use of a nunc pro tunc order was beyond the scope of Rule 74.06(a). This point is denied.

Father contends that the trial court's modification was authorized by Rule 74.06(a) because the trial court was merely correcting a "clerical error" in the September 14 judgment. Father's argument fails

6. To the extent Mother's second point challenges the trial court's failure to grant her motion for a new trial, this argument also fails. Motions based on newly discovered evidence are looked upon with disfavor, and the party urging such an error on appeal must carry a heavy burden. *Taylor v. Yellow Cab Co.*, 548 S.W.2d 528, 535 (Mo. banc 1977). But this does not even appear to be what Mother is claiming. Mother made no attempt to show that she did not know (and, in the exercise of due diligence, could not have known) of the evidence she now claims justi-

fied a new trial. Without such a showing, the trial court could not have granted her motion. *Id.*, at 535. Accordingly, the trial court's overruling of Mother's motion for new trial was not error. *Id.* Finally, even if Mother's motion is viewed as a motion to re-open the record, the trial court did not abuse its discretion by overruling it in light of the fact that Mother did not make the motion until after judgment was entered and because the motion offered no excuse for Mother's failure to offer the evidence at trial.

because the trial court's modification did not—and did not even purport to—correct a "clerical error" in the September 14 judgment. However laudatory the court's purpose might have been in modifying the September 14 judgment, its action was not authorized by Rule 74.06(a).

Rule 74.06(a) only authorizes a trial court to correct "[c]lerical mistakes in judgments . . . arising from oversight or omission[.]" This Court repeatedly has emphasized that this authority is strictly limited. " 'It is universally held that the only true function of a nunc pro tunc order is to correct some error or inadvertence in the recording of that which was *actually done*, but which, because of that error or omission was not properly recorded; and, that it may not be used to order that which was *not* actually done, or to change or modify the action which was taken.' " *Pirtle v. Cook*, 956 S.W.2d 235, 240 (Mo. banc 1997) (quoting *City of Ferguson v. Nelson*, 438 S.W.2d 249, 253 (Mo.1969)) (emphasis in original).[7]

Even though the trial court's modification was not authorized by Rule 74.06(a), it does not follow that Mother is entitled to have the court's clarifying language stricken. Rule 75.01 provides that a "trial court retains control over judgments during the thirty-day period after entry of judgment[.]" Here, it is undisputed that every one of the events relating to the trial court's clarification of the September 14 judgment—i.e., Father's motion, the trial court's judgment adding the clarifying language, Mother's objections to Father's motion, and the trial court's denial of Mother's new trial motion—occurred within this thirty-day period. Accordingly, Rule 75.01 authorized the trial court's clarification of the September 14 judgment, provided that the clarification was supported by "good cause" and Wife was given an opportunity to be heard.

Mother does not contend that the trial court lacked "good cause," nor could she. The modification was the result of Father's efforts to eliminate—without the expense and delay of contempt litigation—Mother's disingenuous grounds for refusing to comply with the custody provisions of the September 14 judgment.[8] In light of the fact that the child's new school year was beginning, the trial court's prompt clarification was intended to (and did) safeguard the best interest of the child by provoking Mother's prompt compliance with the September 14 judgment. Accordingly, the trial court had "good cause" to enter a modification clarifying the September 14 judgment.

■ Mother argues that the trial court did not afford her an "opportunity to be

---

7. In fact, in the modern era where the court's judgment and the document setting forth that judgment are nearly always one and the same, the "corrections" authorized by Rule 74.06(a) will be rare indeed. On the other hand, changes made so that a judgment will reflect what the trial court meant to do, or mistakenly thought it had done, or realized later that it should have done, are not "corrections" and are not authorized by Rule 74.06(a). Accordingly, trial courts must resist the temptation to invoke this rule as authority to make such changes to a judgment, no matter how minor or well-intended.

8. As noted above, the custody provisions in the September 14 judgment were the mirror image of the provisions in the 2008 judgment. In 2008, the parenting plan designated Mother's residence as the child's primary residence for mailing and educational purposes and specified certain periods for the child to live with Father. Mother and Father understood that the child would reside with Mother at all times not specifically designated to Father. Only when the September 14 judgment put this shoe on the other foot did Mother suddenly decide she could not comply with these terms because they were too "vague" and "indefinite."

 

heard" under Rule 75.01 because it entered its modification on October 7 without waiting for Mother to file her objections. Even assuming this was error, however, Mother fails to demonstrate how this resulted in any prejudice to her. There is no question that Mother had an opportunity to be heard—and was heard. She filed written objections to Father's motion seeking the clarification, both in her new trial motion and in separate suggestions in opposition to Father's motion. Even though the trial court entered the modification before Mother filed her objections, Mother makes no attempt to explain how the sequence of these actions affected the outcome or harmed her in any way.

First, it made no difference to Mother when the court's modification became effective because the new language only clarified—but did not change—her (and Father's) rights and obligations under the September 14 judgment. Second, if the trial court had been persuaded by Mother's arguments, it could have granted Mother a new trial or amended the judgment as she had requested notwithstanding that it already had entered the modification. The trial court did not reject Mother's arguments because they were filed too late; it rejected them because they were unpersuasive. Therefore, even if the trial court erred in entering the modification before Mother filed her objections, this sequence of events did not prejudice Mother. Accordingly, there is no ground for this Court to strike the October 7 modification, and Mother's last point is denied.[9]

9. Given that the October 7 modification merely clarified—but did not change—the September 14 judgment, this modification did not alter the practical effect of the parenting plan, i.e., that the child would be in the care, custody and control of Father at all times not

## V. Conclusion

For the foregoing reasons, the judgment is affirmed.

All concur.

specifically set aside to Mother. Therefore, even if Mother had succeeded in convincing this Court to strike the trial court's clarifying language, such a "remedy" would not have resulted in any practical effect on the parties.