

# NUMBER 13-13-00036-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **ROBERT MICHELENA,** | **Appellant,** |
| **v.** | |
| **MONICA MICHELENA,** | **Appellee.** |

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellant Robert Michelena and Appellee Monica Michelena filed for divorce in 2005, and after a jury trial, the original divorce decree was entered on July 23, 2009. The decree divided the couple's property and established the custody arrangement and other obligations of the parties for the couple's minor child. Robert appealed that decree to

this Court; Monica responded and raised numerous cross-issues. *See Michelena v. Michelena*, No. 13-09-00588-CV, 2012 WL 3012642 (Tex. App.—Corpus Christi June 15, 2012, no pet.) (mem. op.). We affirmed the decree, in part, but reversed the division of the assets and remanded for a partial new trial. *See id.* at *20 & 9 n.12.

This appeal arises from proceedings initiated during the pendency of the 2012 *Michelena* appeal in which the trial court ordered Robert to pay arrearages to Monica, including certain expenses related to the couple's child. By two issues, Robert challenges the educational and medical expenses and the attorney's fees awarded to Monica in the enforcement order. We affirm.

## I. Background

In August 2012, Monica filed an amended motion for enforcement in which she sought payment for arrearages Robert allegedly owed her under the terms of the 2009 divorce decree.[1] Specifically, Monica claimed that Robert violated his obligations under the decree when he: failed to pay fifty percent of the child's educational expenses for a period beginning at the entry of the decree and continuing through the filing of the motion; failed to reimburse Monica for fifty percent of the child's medical expenses not covered by insurance[2]; failed to obtain a life insurance policy for the benefit of the child; failed to

---

[1] In the various hearings held by the trial court, the parties intimated that Monica filed her original enforcement action shortly after the entry of the 2009 decree. That pleading is not contained in the record before us.

[2] In her enforcement motion, Monica quoted the following language from the decree regarding medical expenses:

> IT IS ORDERED that the party who pays for a health-care expense on behalf of the child shall furnish to the other party, within 30 days of receiving them . . . [.]

> IT IS FURTHER ORDERED that if the paying party furnishes all of the forms, receipts, bills, and explanations of benefit to the nonpaying party within 30 days of receiving

2

deliver a Wachovia financial account to Monica; and failed to provide written consent for the child's passport.

Monica attached six exhibits to her motion. The first three exhibits detailed the claimed educational expenses. Exhibit 1 included educational expenses incurred from October 2005 through July 2010, fifty percent of which totaled $1,194.32; exhibit 2 included education expenses incurred from August 2011 through May 2012, fifty percent of which totaled $878.81; exhibit 3 included educational expenses incurred from August 2010 through August 2011, fifty percent of which totaled $1,214.88.

---

them, the nonpaying party shall pay his or her share . . . by either paying the health care provider directly or by reimbursing the paying party.

In light of Monica's omission of some of the language in the above portions of the decree, we include the complete language of the quoted portions here for clarity's sake:

IT IS ORDERED that the party who pays for a health-care expense on behalf of the child shall furnish to the other party, within thirty days of receiving them, all forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of the health-care expenses the party incurs on behalf of the child. IT IS FURTHER ORDERED that if the paying party furnishes all of these forms, receipts, bills, and explanations of benefits to the nonpaying party within thirty days of receiving them, the nonpaying party shall pay his or her share of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the paying party at the paying party's last known mailing or residence address for any advance payment exceeding the paying party's share of the expenses no later than thirty days after the nonpaying party receives the following documentation relating to the health-care expense:

    a.     a receipt for a prescription,

    b.     a receipt for a copayment for health-care services,

    c.     a receipt for health care expenses of a type not covered by the health insurance plan, or

    d.     an explanation of benefits stating the benefits paid for all other health-care expenses.

If the paying party does not furnish to the nonpaying party all the forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of a health-care expense the paying party incurred on behalf of the child within thirty days of receiving these documents, IT IS ORDERED that the nonpaying party shall pay his or her share of the uninsured portion of the health-care expense either by paying the health-care provider directly or by reimbursing the paying party at the paying party's last known mailing or residence address for any advance payment exceeding the paying party's share of the expense no later than 120 days after the nonpaying party receives the documentation listed above in this section relating to health-care expense.

The remainder of the exhibits detailed the claimed medical expenses. Exhibit 4 included medical expenses incurred prior to the entry of the divorce decree, for which a $3,404.37 judgment had already been entered against Robert. Exhibit 5 included medical, dental, and vision expenses incurred from November 2006 through August 2011, fifty percent of which totaled $1,765.93. Exhibit 6 included additional expenses incurred starting November 2006 and ending May 2012, fifty percent of which totaled $579.43.

In her motion, Monica asked that Robert be held in contempt for each of his violations, be jailed up to 180 days and fined up to $500. She asked that, because of Robert's "repeated past violations," he be "confined in the county jail" until he "complies with the order of the Court" and then be "placed on community supervision for ten years on release from jail." Monica then requested a judgment on the arrearages in the amount of $9,037.51 and an award of attorney's fees.

At the beginning of the hearing on Monica's motion for enforcement, held in mid-September 2012, the trial court ordered the parties to leave the courtroom and attempt to come to an agreement. Counsel for Robert and counsel for Monica returned to the courtroom a short time later and informed the court they had reached an agreement. Both attorneys were sworn in and dictated the terms of the agreement into the reporter's record. With regard to the educational expenses, Robert agreed to pay the amounts submitted on exhibits 1-3, minus certain expenses that were dictated into the record. The record shows that the total amount agreed to for educational expenses, after deducting the dictated items, was $1,835.07.[3]

---

[3] This amount reflects the total after subtracting the items dictated into the reporter's record at the hearing and then adding together the fifty percent of the remaining items reflected in exhibits 1-3.

With regard to medical expenses, the parties and trial court had the following exchange about the agreement the parties reached:

[Counsel for Monica]: . . . [W]hat we have agreed to is that, because Mr. Michelena failed to cover the child in health—in health insurance for eye care and dental care, that he will pay a hundred percent of those expenses that have been incurred by Mrs. Michelena since the decree of divorce. And we will submit the bills to opposing counsel with respect [to] those amounts.

[Counsel for Robert]: Well, actually, what the decree says, they will split those; but we've never received any bills. Now, he's indicated to me that the amount of any eye and dental since the decree was a hundred or less.

[Counsel for Monica]: Your Honor, I think the problem here is that the decree of divorce required Mr. Michelena to have health insurance that included eye care and dental insurance. He didn't do that, and because he didn't do that, she ended up having to pay all the costs. And that's why I said he has to pay because of that. Our agreement was that he had to pay a hundred percent of that. If we don't have that agreement, then we don't have an agreement on this and then we need to talk.

[Counsel for Robert]: Well, two things. One is you said it was five hundred or less, which I said would be fine.

[Counsel for Monica]: I didn't say how much it was. I said I think it's around five hundred.

[Counsel for Robert]: Do you know how much it is?

[Counsel for Monica]: I will give you the bills. I thought you said we'd give you the bills and whatever it is.

[Court]: Do you have them with you? Do you have them with you?

5

[Counsel for Monica]: We've submitted the bills, yes.

[Counsel for Robert]: No, we have no dental or eye, unless they are included in this.

[Monica]: They are included in.

[Counsel for Robert]: Oh, if they are included in the medicine, then it doesn't have to be added because we have got a deal on the med[ical expenses].

[Counsel for Monica] But we are asking him to pay a hundred percent. What he's been submitt[ing] on the meds is 50 percent. So the agreement is that he pay the other half.

[Court]: So was it an agreement or wasn't it an agreement?

[Counsel for Monica]: I thought there was.

[Counsel for Robert]: It was when he said it was around five hundred. I don't want to get a bill from my client that's two thousand, because remember, she is going back to 2009, date of decree. I could argue that she should have been submitting these [every] 30 days as she got them. She never did. She submits them yearly. Have never gotten anything monthly; but he is willing to pay, but it's around up to five hundred bucks.

[Court]: Well, you okay with that if he'll pay—is the agreement that she wants to be paid a hundred percent up to five hundred bucks?

[Counsel for Monica]: Well, Your Honor—

[Court]: Because I don't know. I mean, that's up to you guys.

[Counsel for Robert]: [The expenses] are already in [these exhibits] anyway.

[Counsel for Monica]: I think it's—I think it's $550, something like that, Your Honor.

6

[Counsel for Robert]:     That's fine.

[Court]:                  All right.   So consider it done.

                          . . . .

[Counsel for Monica]:     Okay, Your Honor.   With respect to all the medical expenses, they are going to pay all the medical expenses that are post-divorce, and all the medical expenses that are pre-divorce we get a judgment on.

[Counsel for Robert]:     Well, he's close.   Everything from 2009 forward she has given bills now, and they have agreed that he will pay his share, less the ones and all the bills were pre-divorce.   What he is referring to is in the decree there was a judgment for past medical bills awarded to her which now come down and now is final judgment.   That's really not supposed to be part of the motion for enforcement and contempt.   She can go exercise that abstracted.   It's already a judgment.   But in the spirit of cooperation, he's going to go ahead and pay that, but he's going to pay because he doesn't want her to go abstract.   It's not part—it shouldn't be part of this motion.   There is another one—

[Counsel for Monica]:     The agreement is that you are going to pay it.

[Counsel for Robert]:     Right.   I mean, otherwise you are going to go down and file a judgment.

                          There is also a 968 that was also in the decree as a judgment.   He is going to pay.

[Court]:                  Those are existing judgments?

[Counsel for Robert]:     Exactly.

[Court]:                  So why would you have to get another judgment?

[Counsel for Robert]:     You wouldn't, but just—we just want the Court

7

to know that we have agreed he is going to pay those.

[Court]: I understand.

[Counsel for Monica]: But that's part of[,] he is going to pay this now.

[Court]: That's what he's saying. . . .

Finally, the parties agreed that Robert would obtain a life insurance policy for the child's benefit within thirty days of the hearing.

From our review of the record, it is apparent that the parties did not come to an agreement on the remaining matters raised by Monica in her motion to enforce. With regard to the passport issue, the parties failed to reach an agreement. With regard to interest on the arrearages for educational and health-care expenses, the parties likewise did not express agreement at the hearing; the trial court stated that it was "going to leave that issue open, and you guys figure it out." Finally, with regard to the Wachovia account, a dispute remained between the parties as to who should have access to the account history.

The next matter raised by Monica at the hearing concerned certain pieces of the child's furniture that the decree ordered Robert to turn over; Monica alleged at the hearing that Robert failed to deliver that furniture. Counsel for Robert expressed concern that the furniture issue was not pleaded in the motion to enforce, and counsel for Monica responded he would "get with [counsel] on that" and "figure out whether we need to come back on that."

The final issue discussed at the hearing was the attorney's fees requested by Monica in her motion to enforce. Counsel for Monica testified as follows regarding his

8

fees:

> I have put in a total of 20 hours into this, and that involved document preparation, research, preparing for the hearing. We've got files and files of stuff that we put together on this issue, Your Honor, and three separate hearings that we've had on this issue, Your Honor.

> My normal billing rate is $400 an hour, Your Honor. The Court knows I have been practicing law for almost 35 years as judge, the Court of Appeals, District Court, County Court-at-Law judge. I have extensive litigation experience, Your Honor. We would request that the Court order an amount of $8,000 in attorney's fees.

Counsel for Robert disputed the number of hours claimed by Monica's counsel, and the ensuing exchange between counsel and the trial court showed a disagreement on the hours counsel for Monica could properly claim in the motion to enforce proceeding. Ultimately, the trial court ruled that it would "grant [Monica] the [$8,000 in] attorney's fees." The trial court then told Monica to "submit an order of everything you all submitted today."

> At the conclusion of the hearing, this final exchange occurred:

| | |
|---|---|
| [Counsel for Monica]: | Your Honor, just for the record, so that there won't be any confusion as to what the expenses were, these are the documents that we've gone over today with respect to all the expenses, and I'm going to offer them as Exhibit No. 1 through 6 on the motion for enforcement so that the Court has a record of what—what expenses we agreed to and what expenses we don't agree to. And he [has] dictated into the record the ones that were not included in there, Your Honor. |
| [Court]: | Well, I guess you need to submit whatever written—whatever the—whatever you all dictated to the record. You all want to submit that. |
| [Counsel for Monica]: | Yes, Your Honor. |
| [Court]: | Very well. Thank you, gentlemen. All right. Well, good luck to you all. |

9

[Counsel for Monica]:     Thank you, Your Honor.   We will submit an order.

In its order on the motion for enforcement, issued nearly two months after the hearing on November 7, 2012, the trial court found that the 2009 divorce decree obligated Robert to do the following:

  a.    to reimburse [Monica] 50% of the educational expenses of the child, as additional child support;

  b.    to purchase and maintain, at his sole cost and expense, health insurance, including dental care and vision care, for the child, as additional child support;

  c.    to reimburse [Monica] 50% for medical expenses, including dental and vision care, incurred by or on behalf of the child, as additional child support;

  d.    to pay Movant a judgment in the amount of $3,404.37, for medical expenses incurred on behalf of the child;

  e.    to purchase and maintain a life insurance policy insuring the life of [Robert], as additional child support;

  f.    to deliver the child's furnishings and the custodial account under the Uniform Gifts to Minors [Act] to [Monica]; and

  g.    to execute the written consent form necessary for securing of a passport for the child.

The trial court then found that "the parties have entered into an agreement as to enforcement and arrearages as contained" in the enforcement order.   The trial court "approve[d] the agreement as to enforcement and arrearages . . . ."   The order then stated that "[p]ursuant to the parties' agreement," the trial court has found that Robert failed to make the educational and medical payments required under the decree.   In the order, the trial court "finds and confirms" that Robert owes $2,030.67 in educational

10

expenses,[4] plus $142.60 in interest, and $5,348.24 in medical expenses,[5] plus $746.88 in interest.[6]  In light of these findings, the trial court awarded Monica a judgment of $2,173 for the educational expenses and a judgment of $6,122.32 for the medical expenses.

The trial court further found that "pursuant to the agreement of the parties," Robert must provide or deliver to Monica:  proof of life insurance coverage; the necessary consent form for the child's passport application; the necessary documents giving her full access to the Wachovia account; and the "Pulaski Armoire" and "Pulaski Dresser" he was ordered to deliver in the decree.  Next, the order awarded "reasonable and necessary" attorney's fees of $8,000 to Monica, to be assessed against Robert.  The order stated that the total amount due to Monica for arrearages and accrued interest was $8,152.99.

On December 6, 2012, Robert filed a motion for new trial, arguing as follows:

> Although all issues in Petitioner's Motion for Enforcement were resolved by agreement of the parties, [Monica] sought and was erroneously awarded attorney's fees.   Even if [Monica] could recover attorney's fees, the amount awarded was clearly excessive.   In addition, [the] order signed by the Court does not accurately reflect the agreement of the parties as dictated into the record.

While the motion for new trial was pending, Robert filed his notice of appeal from the

---

[4] From our review of the record and based on our calculations, there appears to be a discrepancy between the amount of educational expenses the parties agreed to—$1,835.07—and the amount awarded in the order.

[5] From our review of the record and based on our calculations, there also appears to be a discrepancy between the amount of medical expenses agreed to—$3,404.37 (exhibit 4, pre-decree judgment) + $1,194.93 (exhibit 5; subtracting pre-decree expenses and adding half of post-decree medical and the $550 max for dental and vision) + $286.93 (exhibit 6, subtracting pre-decree expenses and adding half of post-decree medical) = $4,886.23—and the amount awarded in the order.

[6] We note that the enforcement order awards Monica interest on the educational and medical arrearages "pursuant to the agreement of the parties" despite the parties' failure to come to an agreement on interest.  We also note that the order does not specify the percentages and time periods used in calculating the interest amounts.

enforcement order on January 7, 2013.

On January 17, 2013, the trial court held a hearing on the motion for new trial and orally granted the motion "as to [Monica's] right to attorney's fees and the amount of the attorney fees, and . . . denie[d] the motion for new trial as to all other issues other than attorney fees."   The trial court then heard testimony and argument from Monica's counsel in support of his fees.   After the testimony, the trial court found that $8,000 was a reasonable fee to be awarded and that Monica should also be awarded $6,000 in conditional attorney's fees in the event of an appeal.   On January 28, 2013, a written order granting the motion for new trial was entered which memorialized the trial court's oral pronouncements.

## II.  The Enforcement Order—Educational and Medical Expenses

By his first issue, Robert argues that the enforcement order did not conform to the parties' agreement as dictated into the reporter's record at the September 2012 hearing on Monica's motion.[7]   Specifically, Robert complains that the amounts awarded to

---

[7] The heading of Robert's first issue states that there "is no evidence or legally insufficient evidence to support" the trial court's findings in the enforcement order.   In one sub-part of his first issue, Robert asserts that the order signed by the trial court was "prepared by counsel for Monica," and there is no evidence that "Robert [] or counsel for Robert [] ever approved the [o]rder before it was signed by the [trial court]."   Robert argues that because the order "was signed by neither the parties nor their attorneys," there is "no evidence" to support the trial court's "finding" that the parties "entered into an agreement."   Counsel for Monica responds that he sent the proposed order to Robert's counsel for his review, but never received a response.   We find no evidence in the record substantiating either counsel's assertions.   In any event, it is clear from our review of the hearing record that the parties reached agreement on some matters.   *See Cantu v. Moore*, 90 S.W.3d 821, 824 (Tex. App.—San Antonio 2002, pet. denied) (holding that the requirements for a Rule 11 agreement are satisfied "when the terms of the agreement [are] dictated before a certified shorthand reporter, and the record reflect[s] who [is] present, the terms of the [agreement], and the parties' acknowledgement of the [agreement])"; *see also* TEX. R. CIV. P. 11.   To the extent that Robert argues that the trial court's entry of Monica's proposed order without first obtaining opposing counsel's approval was an impermissible ex parte action, he has inadequately briefed that point.   *See* TEX. R. CIV. P. 38.1(i).   And to the extent he states his first issue as one of evidentiary sufficiency, we decline to address it as such.   The September 2012 hearing was not an evidentiary hearing.   It was a hearing for the purpose of entering what was essentially the parties' Rule 11 agreement into the record.   *See* TEX. R. CIV. P. 11.

Monica in the order for the child's educational and medical expenses did not reflect the parties' agreement. Robert further complains that the record reflects no agreement as to the matter of the child's furniture.[8] However, Robert failed to preserve these arguments for our review.

The rules of appellate procedure provide that:

[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection or motion that . . . stated the grounds for the [sought-after] ruling . . . with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context . . . [.]

TEX. R. APP. P. 33.1(a)(1)(A). "Although a trial court is prohibited from altering the terms or provisions of parties' settlement agreements . . . , the general rules regarding preservation of error still apply to entry of Rule 11 agreements." *Stubbs v. Ortega*, 977 S.W.2d 718, 723 (Tex. App.—Dallas 1998, pet. denied) (citations omitted); *see Rammah v. Abdeljaber*, 235 S.W.3d 269, 273 (Tex. App.—Fort Worth 2007, no pet.) (holding that appellant did not preserve for appellate review his argument that the trial court erred in refusing to enforce the Rule 11 agreement where appellant failed to move the trial court to enforce the agreement).

Here, at no point before or after the trial court entered its enforcement order did Robert make the complaints to the trial court he now makes on appeal. Although in his motion for new trial he generally averred that the "order signed by the Court does not

---

Although the trial court's use of the term "findings" in its order is not entirely precise, it does not convert this legal issue into a factual or evidentiary one.

[8] Robert does not complain of the remaining portions of the enforcement order, including the interest awarded on the arrearages or the issues with the child's passport, the Wachovia account, and the life insurance.

accurately reflect the agreement of the parties as dictated into the record," he did not point to the specific offending parts of the order. At the hearing on the motion for new trial, counsel for the parties and the trial court discussed the content of the motion and the scope of the hearing as follows:

| [Court]: | Okay. What did I do—here it is. Let me just quickly read the motion for new trial. All right, I'm just taking a look at it. The motion for new trial goes strictly as to attorney's fees? |
|---|---|
| [Counsel for Robert]: | As to attorney's fees. We also think that the— it doesn't reflect the agreements of the parties, but the primary issue is attorney's fees. And, Your Honor, for the record, we would object to [counsel for Monica] being able to reopen and present any evidence of attorney's fees at this point. We would like to have a running objection to his testimony. |
| [Court]: | And that is—well, that is because? |
| [Counsel for Robert]: | Well, because of the fact that we feel it's already been done, and since we've also, if I remember his pleadings correctly, I don't think he pled for conditional awards. So that's the basis for our objection. We would like to have the objection for the record. |
| [Court]: | Okay. Well, let me see if—this is not a ruling yet; this is just an inquiry. I would think procedurally to get from where we are now and to where [counsel for Monica] indicates he wants to go, that would require me to grant the new trial. |
| [Counsel for Monica]: | Correct. |
| [Court]: | And then hold a hearing— |
| [Counsel for Robert]: | That would be— |
| [Court]: | —on the subject matter of the original. |

14

| | |
|---|---|
| [Counsel for Robert]: | We would have no objection to that happening, Your Honor. |
| [Court]: | Am I correct that that— |
| [Counsel for Monica]: | That's exactly what I understand. |
| [Court]: | So I mean, I just don't want to grant the new trial and somebody objects, well, we are not going to do it right away, because if that were the case, I would probably want to read this thing and try to make a ruling on it before the end of the day on the merits. |
| [Counsel for Robert]: | Yes, Your Honor. We have no objection to just granting a new trial, and then he is free to proceed to testify. |
| [Counsel for Monica]: | On the issue of attorney's fees. |
| [Court]: | As in immediately on the issue of the— |
| [Counsel for Monica]: | Just on the issue of attorney's fees. So the other issue, I think—we don't really know what his—what motion for new trial is all about. He's just made a general motion for new trial with respect to the enforcement issues, but it's all together. But the—there is no need for a new trial on the enforcement issue, I think, because we don't know what—he's never told us or the Court or anyone what his basis for his motion for new trial is with respect to the enforcement portion of it. He has told us, although it didn't have anything to do with me not getting sworn in, he just said the amount of attorney's fees was excessive on his motion for new trial on the other issue. So we are asking that the Court grant the new trial, but only with respect to the issue of the attorney's fees, and then we just have a hearing on that issue. And then it just comes—they basically—you open up everything, but you get—you just really make a change, if you are going to make a change, on the issues of attorney's fees. |

15

| [Court]: | All right. Now, is that correct in what he just said? Are you satisfied with that? |
|---|---|
| [Counsel for Robert]: | I would be, Your Honor. |
| [Court]: | All right. So then, I mean, it's—the Court is considering the motion for new trial, but—and nobody raises any legal problem with me granting a new trial as to attorney's fees and denying it as to everything else? |
| [Counsel for Robert]: | The Court can certainly do that. |

In short, even when presented with a clear opening to inform the trial court of his specific objections to the enforcement order, Robert declined to do so and effectively abandoned the general averment in his motion for new trial that the order did not accurately reflect the parties' agreement.[9]

We conclude that Robert failed to state the grounds he now advances on appeal to the trial court with sufficient specificity to make the trial court aware of his complaint and give the trial court the opportunity to rule on them. And nothing in the context of Robert's motion for new trial, in counsels' representations at the hearing, or in any other motion or pleading filed by Robert made his complaints apparent to the trial court. His argument—that the enforcement order did not conform to the parties' agreement as dictated into the reporter's record—was therefore not preserved for our review. Robert's first issue is overruled as waived.

---

[9] We recognize that Robert's complaint is not of the type required to be raised in a motion for new trial in order to preserve it for appeal. *See* Tex. R. Civ. P. 324(a), (b). Nonetheless, he was required to somehow call the complaint to the trial court's attention—be it in a motion to enforce reflecting his understanding of the agreement, in a motion for reconsideration, or in any other manner provided by the rules—in order to preserve it for our review. *See* Tex. R. App. P. 33.1(a).

16

### III. Attorney's Fees

By his second issue, Robert argues that the amount of attorney's fees awarded to Monica was excessive because Monica's evidence failed to properly segregate fees between claims for which they were recoverable and claims for which they were not. Specifically, Robert argues that the trial court awarded Monica's counsel fees related to certain hearings for which attorney's fees were not recoverable.

Under Texas law, a prevailing party may recover attorney's fees only if provided for by statute or a contract between the parties. *Intercont'l Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Tony Gullo Motors v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). Relevant to this case, Texas Family Code sections 106.002 and 157.167 provide that a respondent in a child support enforcement action may be ordered to pay the petitioner's reasonable attorney's fees. TEX. FAM. CODE ANN. § 157.167 (West, Westlaw through 2013 3d C.S.) ("If the court finds that the respondent has failed to make child support payments, the court shall order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to the arrearages . . . ."); *see generally id.* § 106.002(a) (West, Westlaw through 2013 3d C.S.) (providing that in a suit affecting the parent-child relationship, "the court may render judgment for reasonable attorney's fees and expenses"). Nonetheless, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Chapa*, 212 S.W.3d at 313; *see also City of Austin v. Roberson*, No. 13-06-00218-CV, 2008 WL 802315, at *4 (Tex. App.—Corpus Christi Mar. 27, 2008, no pet.) (mem. op.). We will not overturn an award of attorney's fees absent a clear abuse of discretion. *Grynberg v. M–I L.L.C.*, 398 S.W.3d

17

864, 880 (Tex. App.—Corpus Christi 2012, pet. denied).

Here, at the hearing on Robert's motion for new trial, counsel for Monica testified that he prepared for and attended at least five hearings related to the enforcement action against Robert.[10]   Counsel further testified that Monica filed her initial enforcement action shortly after the appeal of the July 2009 divorce decree; in connection with that enforcement action, Monica also filed a motion to transfer venue to Cameron County, the county of the child's new residence.[11]   Counsel testified that the first two to three hearings concerned the disposition of the venue transfer issue, but the trial court delayed in ruling on the enforcement motion.   Monica filed her amended motion for enforcement in August 2012.   Counsel testified that the trial court then held another hearing on the venue issue and finally transferred the case to Cameron County.   After the case was transferred, the trial court held a hearing on the motion to enforce; counsel for Monica testified that he appeared at this hearing but counsel for Robert did not and that the trial court granted Robert's motion for continuance.   The next hearing was the September 2012 hearing at which the parties entered their agreement into the record.

On cross-examination, counsel for Robert questioned whether the hearings about

---

[10] Because the trial court granted Robert's motion for new trial as to his attorney's fees argument, "the slate [was] essentially wiped clean," and as such, the trial court's earlier order and the proceedings associated with that order, in so far as they dealt with attorney's fees, no longer had effect.   *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 644 (Tex. 2009) (citation omitted); *see Wilkins v. Methodist Health Care Sys.*, 160 S.W.3d 559, 563 (Tex. 2005) ("[W]hen the trial court grants a motion for new trial, the court essentially wipes the slate clean and starts over."); *Montemayor v. Ortiz*, 208 S.W.3d 627, 664 (Tex. App.—Corpus Christi 2006, pet. denied) (op. on reh'g) (same).   In our review, then, we only consider the evidence admitted at the new trial hearing.   And the only evidence admitted was the testimony of Monica's counsel.

[11] Monica's initial motion for enforcement and her motion to transfer venue do not appear in the record before us.   We also note that we have no records before us of the hearings held prior to the August 2012 amended motion to enforce.

18

which Monica's counsel testified were all related to the enforcement action. Monica's counsel responded that the only fees he was seeking were related to the enforcement action and that if he included his fees from the underlying divorce case, "it's way above" the amount he testified to at the hearing.

Monica's counsel testified that he "spent at least twenty hours, probably more, of work in this case just to get this enforcement action ultimately decided." Counsel testified that based on his experience, "a reasonable rate in Cameron County for [his] services is $400 an hour."[12] Based on this, the trial court awarded counsel $8,000 in fees incurred in the enforcement action and $6,000 in conditional appellate fees.[13]

Robert argues that some of the hearings about which Monica's counsel testified were related to a petition for writ of mandamus filed by Monica and that Monica may not recover fees for her counsel's work on the mandamus. But there was no evidence presented at the new trial hearing about a mandamus petition[14]; rather, counsel for Monica testified that the hearings for which he sought fees dealt specifically with either the enforcement motion or the venue transfer motion filed with the enforcement motion. The trial court was entitled to believe counsel's assertions, and it is apparent from the

---

[12] On appeal, Robert does not challenge the reasonableness of counsel's rate.

[13] Robert argues that the award of conditional appellate fees was improper because "[a]warding Monica . . . fees for her unsuccessful Petition for Writ of Mandamus would violate the principal [sic] that an award of appellate attorney's fees must be conditioned on the outcome of the appeal." As explained below, we find nothing in the record regarding the mandamus proceeding referenced by Robert. We are not persuaded by Robert's argument in this regard.

[14] To the extent Robert is referring to discussions about a mandamus petition at the September 2012 hearing, we note that there is nothing in the record before us related to a mandamus proceeding associated with this enforcement action. And even assuming the discussion at the September 2012 hearing was some evidence, we cannot consider it because, as discussed above, the slate was "wiped clean" when the trial court granted Robert's motion for new trial. *See In re Dep't of Family & Protective Servs.*, 273 S.W.3d at 644.

award in this case that it did. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (holding that the trier of fact is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony).

Monica was entitled to reasonable attorney's fees associated with her enforcement action, *see* TEX. FAM. CODE ANN. § 106.002; *see also id.* § 157.167, and the evidence provided by her counsel at the new trial hearing showed that she incurred such fees. In short, we conclude that Monica provided evidence of fees incurred specifically in relation to her enforcement action, and we therefore cannot conclude that she failed to properly segregate her fees. *See Chapa*, 212 S.W.3d at 313. The trial court did not abuse its discretion in awarding Monica attorney's fees. *See Grynberg*, 398 S.W.3d at 880. Robert's second issue is overruled.

## IV. Conclusion

We affirm the order of the trial court on Monica's motion to enforce.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 8th
day of January, 2015.

20