**Durinda Dawn STUBBS, Guardian of the Person and Estate of Clyde Tabor, Appellant,**

v.

**Burinda Beth ORTEGA, Guardian of the Person and Estate of Marcella Tabor, an Incapacitated Person, Appellee.**

No. 2–97–058–CV.

Court of Appeals of Texas, Fort Worth.

July 9, 1998.

Rehearing Overruled Aug. 13, 1998.

Vogel, Thomas & Pruitt, Andrew Vogel, Fort Worth, for appellant.

Kelcie Hibbs, Robert J. Gieb, Fort Worth, for appellee.

Before CAYCE, C.J., and DAY and HOLMAN, JJ.

## OPINION

DAY, Justice.

This is an appeal from an order in a guardianship proceeding. The parties are Burinda Beth Ortega, the guardian; Marcella Tabor, the ward and Ortega's mother; and Clyde Tabor, Marcella's husband and Ortega's father.[1] Ortega sought leave from the probate court to file for divorce on behalf of her mother, and Clyde opposed the motion. Following an evidentiary hearing, the probate court entered an order granting Ortega authority to file for divorce on behalf of her ward.

In ten points, Clyde contends that the trial court abused its discretion in granting Ortega's motion, that allowing a guardian to sue for divorce on behalf of her ward violates Texas public policy, and that there is no evidence or insufficient evidence to support

---

1. Since entry of the order that is the basis of this appeal, Durinda Dawn Stubbs, Clyde's grand-daughter, has been appointed guardian of Clyde's person and estate.

the probate court's findings of fact and conclusions of law. In addition, Ortega has filed a motion to dismiss this appeal, alleging that we do not have jurisdiction because the probate court's order was interlocutory.

We affirm.

## BACKGROUND

Although the record in this case is factually complex and replete with allegations of misdeeds, only a brief recitation of the most mundane facts is necessary to the disposition of the issues before us. The facts are taken primarily from the parties' pleadings and appellate briefs.

Clyde and Marcella Tabor have been married for more than 50 years. Marcella is in the final stages of Alzheimer's disease and cannot see, speak, or hear. On January 11, 1993, the probate court entered an order appointing Ortega as Marcella's guardian[2] and instructing Clyde and Ortega to try to reach an equitable partition of the Tabors's sizable community estate without the court's involvement. Failing to reach such an agreement, Ortega filed a motion for partition. The court thereafter referred the parties to mediation. On February 19, 1993, Ortega (representing Marcella) contracted with Clyde to partition the Tabors's community estate. The parties' contract ("original agreement") included a provision in which Ortega agreed not to seek a divorce for her ward except in the event of abuse by Clyde.

On April 20, 1993, the probate court entered an order ("1993 order") appointing Ortega as guardian of Marcella's estate and person, and partitioning the Tabors's community estate. The court adopted the parties' original agreement to partition the property, but modified the provision regarding Ortega's right to seek a divorce on behalf of her ward as follows:

> Burinda Beth Ortega, as Guardian of the Person and Estate of Marcella Tabor agrees not to seek permission from the Court to obtain a divorce for Marcella Tabor except in the event of *physical*

abuse by Clyde Tabor to Marcella Tabor or *in the event of good cause shown as determined by the presiding judge of this court.* (Emphasis supplied.)

Neither party objected to the trial court's modification or filed a motion to correct or modify the order.

On October 1, 1996, Ortega filed a motion for authorization from the trial court to file for divorce on behalf of her ward, alleging that good cause existed in support of the motion. At the evidentiary hearing, Ortega alleged that Clyde had been verbally abusive to Marcella and that a divorce was necessary to protect Marcella's separate property assets from Clyde's creditors. In addition, Marcella's guardian ad litem argued that Ortega's motion should be granted because Clyde had engaged in a "continuing campaign of harassment" against both Ortega and Marcella and a divorce would be in Marcella's best interest. At the conclusion of the hearing, the probate court granted Ortega's motion. Clyde filed a motion for new trial, which was overruled by operation of law.

Upon Clyde's request, the court filed its findings of fact and conclusions of law. The court found that, among other things, Clyde had verbally abused Marcella since the parties' February 19 agreement and that good cause existed to authorize Ortega to proceed with a divorce action on her ward's behalf. In its conclusions of law, the court held that it was in Marcella's best interest to allow Ortega to proceed with a divorce action on Marcella's behalf, good cause having been shown.

Clyde perfected his appeal and filed a motion to stay the divorce proceeding, which this court granted. Ortega thereafter filed a motion to dismiss for want of jurisdiction, alleging that the probate court's order was interlocutory. Because we cannot consider the merits of this appeal unless there was a final disposition of this issue in the probate court, we first address Ortega's contention that this appeal is interlocutory.

---

2. The record does not include the court's January 1993 order, which apparently named Ortega as Marcella's temporary guardian.

## INTERLOCUTORY APPEAL

■ Under section five of the probate code, "[a]ll final orders of any court exercising original probate jurisdiction shall be appealable to the courts of appeals." TEX. PROB.CODE ANN. § 5(f) (Vernon Supp.1998). To appeal a probate matter, however, it is not necessary that the order or judgment finally and fully dispose of the entire probate proceeding. *See Crowson v. Wakeham,* 897 S.W.2d 779, 781 (Tex.1995) (citing *Kelley v. Barnhill,* 144 Tex. 14, 188 S.W.2d 385, 386 (Tex.1945)); *(Spies v. Milner,* 928 S.W.2d 317, 318 (Tex.App.—Fort Worth 1996, no writ)). Where the order finally disposes and is conclusive on the issue or controverted question for which that particular part of the proceeding was brought, the order is final and appealable. *See Crowson,* 897 S.W.2d at 781 (citing *Kelley,* 144 Tex. 14, 188 S.W.2d at 386; *Spies,* 928 S.W.2d at 318). The supreme court has adopted the following test for determining whether a probate order may be appealed:

> If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

*Crowson,* 897 S.W.2d at 783.

In this case, there is no express statute which declares that the trial court's decision to allow a guardian to file for divorce on behalf of her ward is a final and appealable order. *Cf.* TEX. PROB.CODE ANN. § 55(a) (Vernon 1980) (specifically stating that a judgment in a proceeding to declare heirship "shall be a final judgment, and may be appealed or reviewed"). Thus, the issue is whether the probate court's order "dispose[s] of all issues in the phase of the proceeding for which it was brought." *Crowson,* 897 S.W.2d at 783. Because the probate court's order finally disposed of all the issues (whether good cause existed for Ortega to petition for divorce on behalf of her ward) and parties (Ortega, Clyde, and Marcella) that relate to the underlying proceeding (the hearing on Ortega's motion for authority to file lawsuit), we hold that the order constitutes the final disposition of a matter that may be appealed. *See id.* We deny Ortega's motion to dismiss.

With this question settled, we now turn to the merits of Clyde's appeal. We must answer two questions to decide this case: (1) does Texas public policy prohibit a guardian from filing for divorce on behalf of her ward, and if not, (2) was there sufficient evidence to support the probate court's conclusion of law that good cause existed to grant Ortega's motion?

## STANDARD OF REVIEW

■ Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *See Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). Unchallenged findings of fact are binding unless the contrary is established as a matter of law or there is no evidence to support the finding. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986).

■ An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. *See Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. *See Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 29 (Tex.1993).

■ Conclusions of law are reviewable de novo as questions of law. *See Nelkin v. Panzer,* 833 S.W.2d 267, 268 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.), *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), *overruled on other grounds,*

*Shumway v. Horizon Credit Corp.*, 801 S.W.2d 890, 894 (Tex.1991). We must uphold the trial court's conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See Truck Ins. Exch. v. Musick*, 902 S.W.2d 68, 69–70 (Tex.App.—Fort Worth 1995, writ denied); *Nelkin*, 833 S.W.2d at 268.

## AUTHORIZATION FOR GUARDIAN TO PETITION FOR DIVORCE

### A. Texas Public Policy

■ In his second point, Clyde asserts that the trial court order's authorizing Ortega to file suit for divorce on behalf of her ward violates Texas public policy. To determine issues of this nature, we look to the state's statutes and judicial decisions for expressions of public policy. *See Montgomery v. Browder*, 930 S.W.2d 772, 778 (Tex.App.—Amarillo 1996, writ denied); *Dairyland County Mut. Ins. Co. v. Wallgren*, 477 S.W.2d 341, 342 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.). Assuming that it is still the public policy of this state to foster and protect marriage and discourage divorce, *see Kelly v. Gross*, 4 S.W.2d 296, 297 (Tex.Civ.App.—El Paso 1928, writ ref'd), this policy does not act as an absolute bar to divorce proceedings.[3] Nor does this policy bar a mentally incapacitated person from obtaining a divorce, as Clyde asserts.

In *Wahlenmaier v. Wahlenmaier*, the appellant contended that the trial court erred in granting a divorce between the parties because the wife was not mentally competent. 750 S.W.2d 837, 838 (Tex.App.—El Paso), *writ denied*, 762 S.W.2d 575 (Tex. 1988). In its analysis, the El Paso Court of Appeals relied on the predecessor to Section 576.001 of the Texas Health and Safety Code, which provides:

(a) A person with mental illness in this state has the rights, benefits, responsibilities, and privileges guaranteed by the constitution and laws of the United States and this state.

(b) Unless a specific law limits a right under a special procedure, a patient has:

. . . .

(3) the right to sue and be sued;

. . . and

. . . .

(6) all rights relating to domestic relations.

Tex. Health & Safety Code Ann. § 576.001 (Vernon 1992). The court found:

[S]ince this statutory provision gives every person who has a mental incapacity every right and privilege guaranteed by our constitution and laws, it must include a right to obtain a divorce. It follows that, since the person may not be able to act for themselves, a court appointed guardian ad litem or next friend must be able to exercise those rights for a mentally ill person.

*Wahlenmaier*, 750 S.W.2d at 839. The court thus concluded that the wife's mental incompetence was not an absolute bar to divorce. *Id.*

■ In a one-page opinion, the Supreme Court of Texas affirmed the appellate court's decision and held that a guardian or next friend may exercise the right of a mentally ill person to obtain a divorce. *See Id.*, 762 S.W.2d at 575. The court also expressly overruled all previous appellate decisions to the contrary. *See Id.* Although Clyde seeks to distinguish his appeal from *Wahlenmaier*, the supreme court's holding was unequivocal and not limited to a particular set of facts or circumstances. Furthermore, the language of section 576.001 of the health and safety code, which expressly guarantees the domestic rights of the mentally ill, supports the conclusion that a guardian must be able to petition for divorce on behalf of a mentally ill person. As a result, we hold that allowing a guardian to petition for divorce on behalf of her ward does not violate the public policy of this state. Clyde's second point is overruled.

### B. Good Cause to Petition for Divorce

In Clyde's remaining points, he asserts that the trial court erred in granting the order authorizing Ortega to file for Marcella's divorce because (1) the contractual

---

**3.** To the contrary, the Legislature has expressly authorized divorces in both no-fault and fault situations. *See* Tex. Fam.Code Ann. §§ 6.001–.007 (Vernon Supp.1998).

agreement adopted by the probate court in its April 1993 order prohibited Ortega from seeking authorization to file for divorce on behalf of her ward, (2) the evidence was insufficient to support a finding that good cause existed for the order, (3) the evidence was insufficient to support the court's finding that Clyde had transferred community assets into a limited partnership in which Marcella had no interest, (4) the evidence was insufficient to support the court's finding that Clyde had transferred community assets to an irrevocable trust in which Marcella was not named as a beneficiary, (5) there were no pleadings to support the court's finding that Clyde had committed constructive fraud on Marcella and the issue was not tried by consent, (6) the evidence was insufficient to support the court's finding of constructive fraud, (7) Clyde had no legal obligation to inform his wife's guardian of any disposition of community property, (8) there was no evidence that Clyde physically abused Marcella after entry of the 1993 order, and (9) the evidence was insufficient to support the court's finding that Clyde had verbally abused Marcella after entry of the 1993 order.

Although Clyde's complaints are numerous and at times contradictory, the issues properly before us are narrow and fact-specific. In this case, we do not decide whether sufficient grounds existed on which to grant a divorce between the Tabors, whether a guardian may sue for divorce on behalf of her ward without authorization from the probate court, or the rights of a husband to stay married to his incapacitated spouse. Rather, we decide *only* whether there was sufficient evidence to support the trial court's conclusion that good cause existed to allow Ortega to petition for Marcella's divorce. Our decision in this matter turns on the original agreement entered by the parties, the probate court's modification of that agreement in its 1993 order, and the parties' mutual failure to timely object to the court's modification. As a result, we confine our discussion to only those points and facts that are dispositive of this case. Because points one, three, and ten are related, we address them together.

■ In his first point, Clyde complains that the trial court erred in authorizing Ortega to file for divorce on behalf of her ward. Specifically, Clyde asserts that the original agreement signed by the parties in February 1993 and adopted by the probate court in April 1993 contractually prohibited Ortega from seeking a divorce except in the event of *abuse* by Clyde. Although Clyde does not deny the validity of the court's 1993 order— including the provision that authorized Ortega to seek permission to file for Marcella's divorce in the event of physical abuse by Clyde or good cause as determined by the trial court—he nevertheless alleges that the court erred in granting Ortega's motion and thereby failing to enforce the terms of the original agreement. However, Clyde's contention must fail for several reasons.

■ First, because the provisions of the original agreement and the court's 1993 order are inconsistent, we must determine which language is controlling. Although a trial court is prohibited from altering the terms or provisions of parties' settlement agreements, *see Tinney v. Willingham*, 897 S.W.2d 543, 545 (Tex.App.—Fort Worth 1995, no writ), the general rules regarding preservation of error still apply to entry of Rule 11 agreements. *See* TEX.R.APP. P. 33.1(a); *In re Omni Video, Inc.*, 60 F.3d 230, 233 (5th Cir.1995) (settlement agreement announced in court, which omitted term of original agreement, controlled where party failed to object). In this case, Clyde did not timely object to the trial court's modification. Because he did not, he has waived the right to complain about the court's modification and to insist that the terms of the original agreement be enforced.

In addition, in Clyde's appellate brief, he contends that the trial court's 1993 order "requires at the very least, that before seeking permission to obtain a divorce for Marcella Tabor, *either physical abuse* by Clyde Tabor to Marcella Tabor [must] occur *or good cause* must be shown as determined by the Presiding Judge of the Court." (Emphasis supplied.) Clyde thus concedes that the trial court modified the original agreement and that the terms of the court's final agreement control.

Finally, Clyde's argument assumes that Ortega failed to establish abuse by Clyde, as provided in the original agreement. As explained below in our discussion of Clyde's tenth point, this assumption is erroneous.

Clyde argues in his third point that the evidence is insufficient to support the probate court's conclusion that good cause existed to grant the guardian's motion for authorization to file suit. In the same point, Clyde also asserts that the evidence was insufficient to support the court's conclusion of law that granting the guardian's motion for authority to file for divorce was in the best interest of the ward. Specifically, he maintains that Ortega had to prove one of the statutory grounds for granting a divorce to support a finding of "good cause." TEX. FAM.CODE ANN. §§ 6.001–.007 (Vernon Supp. 1998). However, as we have already explained, the issue on appeal is not whether the evidence was sufficient to find that grounds existed for granting a divorce, but rather whether the evidence was sufficient to support the trial court's conclusion that good cause existed to allow Ortega to petition for Marcella's divorce.

Clyde also contends in both his first and his tenth points that there was insufficient evidence to support the trial court's finding that he verbally abused Marcella. He argues that a statement does not constitute verbal abuse unless the party who is the recipient of the statement perceives it as abusive. Because Marcella is unable to express her thoughts, Clyde contends the evidence was insufficient to establish the abusive nature of his comments. We disagree.

During the hearing on the motion for authority to file suit, Ortega testified that Clyde had verbally abused Marcella since the probate court's order was entered in April 1993. Ortega testified that during Clyde's visitations with Marcella, he "constantly" criticized Marcella about what she was wearing, whether she was sick, and also by talking about Ortega in a derogatory manner. The probate court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See McGalliard,* 722 S.W.2d at 696; *Cole v.*

*Cole,* 880 S.W.2d 477, 481 (Tex.App.—Fort Worth 1994, no writ). Based on the court's finding of fact on this issue, it is apparent that the court accepted Ortega's testimony as true.

After reviewing the entire record, we cannot say that the evidence supporting the trial court's finding that Clyde verbally abused Marcella was so weak or that the evidence to the contrary was so overwhelming that the trial court's finding should be set aside and a new trial ordered. As a result, we find that the evidence was sufficient to support the probate court's finding that Clyde verbally abused Marcella. We also find that this evidence was sufficient to support the court's conclusion that good cause existed to grant the guardian's motion for authority to file lawsuit and that it was in Marcella's best interest to allow the suit to proceed. Accordingly, we overrule Clyde's first, third, and tenth points.

## CONCLUSION

Because we find that the probate court's order finally disposed of all the parties and issues in the proceeding for which it was brought, we hold that this is a final order and we have jurisdiction over this appeal. Moreover, we hold that Texas public policy does not prohibit authorizing a guardian to petition for divorce on behalf of her mentally incapacitated ward. Finally, because we must uphold the trial court's conclusions of law that are supported by the evidence, and because there was sufficient evidence for the court to find that Clyde verbally abused Marcella, we hold that the trial court did not err in concluding that good cause existed to authorize Ortega to petition for divorce on behalf of her ward and that this authorization was in the ward's best interest. In light of our disposition of points one, two, three, and ten, we need not address Clyde's remaining points.

We affirm the probate court's order, and we lift the stay of divorce proceedings.