

# NUMBER 13-21-00442-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**IN THE MATTER OF THE MARRIAGE OF MICHELLE MAPUANA MANN
AND JASON R. MANN, AND IN THE INTEREST OF
M.K.M. AND M.M.M., CHILDREN**

**On appeal from the 103rd District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Peña
Memorandum Opinion by Justice Benavides**

Appellant Michelle Mapuana Mann (Michelle) appeals from a final decree of divorce that dissolved her marriage to appellee Jason R. Mann (Jason). By two issues, the first of which contains multiple subparts, Michelle argues the trial court erred by: (1) entering a final decree of divorce with provisions that do not conform to the parties' Rule 11 agreement; and (2) permitting her motion to modify, correct, or reform the

judgment to be denied by operation of law. We affirm in part and reverse and remand in part.

## I. BACKGROUND

According to the pleadings, Michelle and Jason were married around August 20, 1994. On October 8, 2019, Michelle filed her original petition for divorce. On December 10, 2019, Jason filed an answer and counterpetition for divorce. The couple had three children in total, only two of whom were minors at the time of the divorce: M.K.M. and M.M.M. On June 29, 2021, a hearing was held, and Michelle announced that the parties were able to reach an informal settlement agreement. At the hearing, the parties read portions of the agreement into the record. The trial court commended the parties for arriving at an agreement and stated, "So[,] I'm going to grant the divorce, and good luck to y'all."

On August 23, 2021, the Rule 11 agreement was filed with the court. The agreement contains the following relevant provisions:

- "With regards to the children, the parties will be joint managing conservators, [Michelle] will be primary to determine the residence of the children; Michelle . . . agrees to a geographical restriction of Hidalgo and Cameron County for the next three years";

- "Jason . . . continues to pick up [M.M.M.] from school and keep her until 6 p.m. during the week and until 8 p.m. on Thursdays unless agreed on earlier pickup. No alcohol is to be consumed while [Jason] is in possession of the child or for the 4 hours prior to his possession of the children";

- "[M.K.M.] will be under a standard possession order, and will have the option to go to dinner at [Jason]'s home on Thursdays at his discretion";

2

- "Child support pursuant to the guidelines based upon [Jason]'s 2019 tax return Schedule C unless Schedule C gross receipts are higher for 2020 as filed";

- "Jason . . . agrees to indemnify Michelle . . . for the SBA emergency loan, the Dunkin note[,] as well as all other debt and matters related to income tax during the marriage"; and

- "Personal property will remain in possession of the parties[.]"

On September 14, 2021, Michelle filed her motion to enter the final decree of divorce, representing to the court that the parties were unable to agree to a child support amount. Jason also filed a motion to enter that same day. The following day, the trial court heard argument on the parties' competing motions to enter. Michelle explained that there was "just one" issue the parties could not agree on, which was child support.

The parties presented conflicting interpretations of the provision concerning child support, and Jason informed the court that his gross receipts for 2020 were in fact higher than those for 2019. Michelle argued that what the parties "clearly . . . meant" by their agreement was that if the 2020 gross receipts were higher, child support would be calculated without subtracting Jason's expenses from his gross receipts. Jason argued that if that is what the parties intended, the agreement "would have said, unless Schedule C gross receipts are higher for 2020, in which case, [Jason] will pay child support based on gross receipts." Jason's position was that the controlling language in the agreement was that child support would be calculated based on the guidelines in the family code, which require that the court first calculate net income based on the obligor's gross income before determining an appropriate amount of child support. *See* TEX. FAM. CODE ANN.

3

§§ 154.061(a), 154.065. The trial court took the matter under advisement.

On September 27, 2021, the trial court signed its final decree of divorce. The decree contains the following recital:

> The [c]ourt finds that the parties have entered into a Rule 11 [a]greement dated June 28, 2021[,] and filed with the [c]ourt on August 23, 2021, such agreement which was signed by counsel for Petitioner and signed by Respondent in accordance with [Rule] 11 [of the Texas Rules of Civil Procedure], and which resolved all issues pending in this case. The [c]ourt finds that the provisions in the agreement pertaining to the conservatorship, possession of and access to the children, and the support of the children are in the best interest of the children and that the parties' agreement as to the division of the community estate is a just and right division of the community estate. Accordingly, the [c]ourt approves the agreement of the parties testified to by the parties at the final hearing held on June 29, 2021[,] and as set out in the Rule 11 Agreement filed with the [c]ourt on August 23, 2021, incorporates the provisions of the agreement into this Final Decree, and makes the terms and conditions of the agreement the judgment of the [c]ourt.
>
> The agreements in this Final Decree of Divorce were reached pursuant to [an] informal settlement process. This Final Decree of Divorce is meant to represent a merger of the Rule 11 agreement dated June 28, 2021[,] and the [c]ourt's final rulings at the final hearing held on June 29, 2021, and the [c]ourt['s] ruling on the motion to enter decree held on September 15, 2021. To the extent there exist any differences between the Rule 11 Agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances.

The trial court's final decree of divorce also states that the "divorce [was] judicially PRONOUNCED AND RENDERED in Brownsville, Texas on June 29, 2021[,] and signed for entry on September 27, 2021."

Michelle requested findings of fact and conclusions of law on October 1, 2021, and filed a motion to correct, reform, or modify the final decree of divorce on October 14, 2021. In her timely motion to correct, reform, or modify, Michelle argued that the following

4

provisions improperly deviated from the parties' Rule 11 agreement: (1) the provision concerning consumption of alcohol; (2) the provision concerning exchanging the children if Michelle moves out of county; (3) the amount of child support; (4) the start date for child support; and (5) the award to Jason of his "sole proprietorship business." Michelle later filed three amended motions to correct, reform, or modify the final decree that were not timely.

The trial court entered its findings of fact on November 1, 2021. Michelle's timely motion to correct, reform, or modify the judgment was later overruled by operation of law. *See* TEX. R. CIV. P. 329(c). This appeal followed.

## II.    JUDGMENT'S CONFORMITY TO RULE 11 AGREEMENT

Michelle argues that certain terms of the final decree of divorce do not properly conform to the parties' Rule 11 agreement.

## A.    Applicable Law & Standard of Review

An agreement satisfies the requirements of Rule 11 if it is either "made in open court and entered of record," or if it is (1) in writing, (2) signed, and (3) filed with the court. *Id.* R. 11. "[A] Rule 11 settlement agreement is not enforceable unless it is complete within itself as to every material detail and contains all the essential elements of the agreement so the contract can be ascertained from the writing, without resort to oral testimony." *Prevost v. Ins. Advisors of Tex.*, 46 S.W.3d 289 (Tex. App.—Fort Worth 2001, pet. denied). A trial court has a ministerial duty to enforce a valid Rule 11 agreement. *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't. of Health & Hum. Servs.*, 540 S.W.3d

5

553, 560 (Tex. 2018). "A final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement." *Vickrey v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976). A judgment is not in strict or literal compliance if it improperly removes or adds material terms. *Chisholm v. Chisholm*, 209 S.W.3d 96, 98 (Tex. 2006). The material terms of an agreement are determined on a case-by-case basis. *See Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016); *see also In re J.P.*, No. 13-18-00648-CV, 2020 WL 103858, at *5 (Tex. App.—Corpus Christi–Edinburg Jan. 9, 2020, pet. denied) (mem. op.). But generally, the material terms are those that the parties would reasonably regard as the vitally important ingredients of their bargain. *Fischer*, 479 S.W.3d at 237. A trial court abuses its discretion by entering a judgment that departs from these terms. *See Garcia-Udall v. Udall*, 141 S.W.3d 323, 332 (Tex. App.—Dallas 2004, no pet.).

Occasionally, a trial court may alter the terms to a Rule 11 agreement, but the ability to do so depends on "the parties' intent as depicted by the language of the agreement." *In re G.D.H.*, 366 S.W.3d 766, 770 (Tex. App.—Amarillo 2012, no pet.); *see Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.). For instance, "[t]he law does not require that the parties agree to all of the terms necessary to effectuate the purposes of the agreement; it is necessary only that the parties reach an agreement as to all material terms." *Glynn v. Glynn*, 651 S.W.3d 348, 354 (Tex. App.—Houston [1st Dist.] 2022, no pet.). "A trial court may modify the terms of a settlement agreement as long as the modifications do not add

6

terms the parties have not agreed to, significantly alter the original terms, or undermine the intent of the parties." *Id.* "If the decree adopts mechanisms to enforce the parties' agreement while remaining consistent with their intent, it is enforceable." *Id.* at 354–55; *see also Kramer v. Kastleman*, No. 03-13-00133-CV, 2017 WL 5119211, at *9 (Tex. App.—Austin Nov. 3, 2017, pet. denied) (mem. op.) ("[W]e conclude that the divorce decree did not add material terms to the settlement agreement or conflict with the parties' intent but instead added clarifying terms necessary to effectuate the purpose of the settlement agreement based on agreement in open court.").

Rule 11 agreements are construed under the same rules as contract interpretation. *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561. "Contract terms are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract." *In re Caballero*, 441 S.W.3d 562, 574 (Tex. App.—El Paso 2014, orig. proceeding). "If a contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous[,] and we construe it as a matter of law." *Shamrock Psychiatric Clinic*, 540 S.W.3d at 561. If a trial court enters a judgment that does not conform to the parties' Rule 11 agreement, the appropriate remedy is to reverse and remand "for the limited purpose of reforming the decree and entering judgment in accordance with the agreement reached by the parties." *See Clanin v. Clanin*, 918 S.W.2d 673, 678 (Tex. App.—Fort Worth 1996, no writ); *see also In re L.J.K.*, No. 04-20-00596-CV, 2022 WL 3907188, at *1 (Tex. App.—San Antonio Aug. 31, 2022, no pet.) (mem. op.).

**B. Analysis**

**1. Child Support Amount**

Michelle argues that the trial court did not follow the parties' agreement in calculating child support. That agreement reads as follows: "Child support pursuant to the guidelines based upon [Jason]'s 2019 tax return Schedule C unless Schedule C gross receipts are higher for 2020 as filed." In its findings of fact and conclusions of law, the trial court found that Jason and Michelle "agreed that [Jason]'s child support would be calculated pursuant to the guidelines based on [Jason]'s 2019 tax return Schedule C." The trial court also found that "no evidence was presented at the final hearing as to [Jason]'s 2019 tax return Schedule C for the [c]ourt to calculate [Jason]'s child support pursuant to the Texas Family Code child support guidelines." Therefore, the trial court concluded that, because Jason submitted a proposed decree, he "agreed and stipulated that his monthly net resources for calculation of child support are approximately $4,100."

Michelle challenges these findings, arguing that she filed the 2019 Schedule C tax return with the trial court. While this is true, at the September 15 hearing, both Jason and Michelle agreed that Jason's gross receipts for 2020 were higher. Based on the parties' Rule 11 agreement, this would mean that the fact that the 2019 Schedule C tax return was filed is irrelevant, as the parties agreed that child support would not be based on the 2019 Schedule C tax return if 2020 gross receipts were higher. The 2020 Schedule C tax return does not appear in the record.

Michelle claims that the proper interpretation of the parties' Rule 11 agreement

requires the court to calculate child support based on Jason's gross receipts for 2020. Jason claims that the proper interpretation requires the court to apply the guidelines concerning child support to his gross receipts for 2020, which would require a calculation of his net income. *See* TEX. FAM. CODE ANN. § 154.065 (detailing what is included in self-employment income for the purpose of calculating child support). We need not, and in fact, should not reach a conclusion on the proper interpretation of the Rule 11 agreement,[1] because regardless of which party's interpretation is correct, the trial court did not follow either. In its findings of fact and conclusions of law, the trial court acknowledged that its award of child support was not based on the parties' Rule 11 agreement. Instead, the trial court based the amount of child support on Jason's proposed decree and had no evidence before it that this amount conformed with the Rule 11 agreement.

The trial court found that the parties' agreement concerning child support was in the children's best interest, and it was therefore bound to follow the terms of the agreement. *See id.* § 154.124(b). Nevertheless, the trial court did not base its child support calculation off the parties' agreement, and it abused its discretion by failing to do so. *See Chisholm*, 209 S.W.3d at 98 (holding that a judgment must be in strict or literal compliance with the parties' agreement); *see also In re C.E.H.*, No. 09-19-00120-CV, 2020 WL 5666081, at *3 (Tex. App.—Beaumont Sept. 24, 2020, no pet.) (mem. op.) (reversing the trial court's child support determination because "[t]he record before us

---

[1] We must refrain from writing advisory opinions on issues that are not properly before us. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (explaining that the Texas Constitution prohibits the judiciary from issuing advisory opinions).

does not show the trial court had any evidence of Father's income to support that the amount calculated in the final order is consistent with the parties' agreement for guideline child support").

We sustain this sub-issue.

### 2. Alcohol Prohibition Provision

The parties' Rule 11 agreement provided that "[n]o alcohol is to be consumed while [Jason] is in possession of the children or for the 4 hours prior to his possession of the children." Michelle argues that the trial court abused its discretion by omitting this provision from its final decree. Jason responds that this provision of the parties' agreement is ambiguous, and thus, likely unenforceable, because it does not specify which party is prohibited from imbibing alcohol during his periods of possession. *See Gen. Metal Fabricating Corp. v. Stergiou*, 438 S.W.3d 737, 744 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The trial court did not find that the provision on alcohol in the parties' agreement was ambiguous. Regardless, "[w]hether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). "We interpret Rule 11 agreements based on the intention of the parties from the language of the entire agreement in light of the surrounding circumstances, including the state of the pleadings, the allegations therein, and the attitude of the parties with respect to the issues." *Kanan*, 407 S.W.3d at 328; *see State Farm Lloyds v. Gulley*, 399 S.W.3d 242, 246–47 (Tex. App.—San Antonio 2012, no pet.).

In both Michelle's original petition and her first amended petition, she requested that Jason be enjoined from consuming alcohol within twelve hours prior to or during his period of possession of the children. The record does not reveal that Jason made a reciprocal request. Even if such a request was made, it makes little sense that the parties would agree that Michelle would abstain from drinking while Jason was in possession of the children but would have no limitations on her drinking habits during her own periods of possession. *Cf. Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626 (Tex. 2011) ("[U]nder general rules of construction we avoid strictly construing an instrument's language if it would lead to absurd results."); *Se. Cnty Mut. Ins. v. Surety Bank, N.A.*, 270 S.W.3d 684, 689 (Tex. App.—Fort Worth 2008, no pet.) ("We will not construe contracts to produce an absurd result when a reasonable alternative construction exists."). Based on the surrounding circumstances of this case, the state of the pleadings, and the allegations therein, we hold that the provision at issue unambiguously provides that Jason is not to consume alcohol when in possession of the children or for the four hours prior to his periods of possession. *See Shamrock Psychiatric Clinic*, 540 S.W.3d at 561.

Jason also asserts that Michelle did not show there was a need for the alcohol prohibition in the final decree. First, we note that the trial court did not make a finding concerning the necessity of the alcohol prohibition. Second, we are unaware of any case law, and Jason cites to none, that permits a trial court to reject portions of a Rule 11 agreement if it finds that those portions are unnecessary. Indeed, unless the trial court finds the terms of a Rule 11 agreement are not in the children's best interest, it has no

discretion to vary the terms of its judgment from those of the parties' Rule 11 agreement. *See* TEX. FAM. CODE ANN. § 153.007. Here, the trial court specifically found that the terms of the agreement were in the best interest of the children. Thus, by not including this language in the parties' final decree of divorce, the trial court abused its discretion. *See Shamrock Psychiatric Clinic*, 540 S.W.3d at 560; *see also In re C.D.G.*, No. 05-21-00132-CV, 2022 WL 2763352, at *3 (Tex. App.—Dallas July 15, 2022, pet. filed) (mem. op.) (holding that when the final decree of divorce states that "in the event of any difference between the parties' [agreement] and the final decree, the final decree will control," differences between the agreement and the decree constitute judicial error); *Wiegrefe v. Wiegrefe*, No. 03-16-00665-CV, 2017 WL 3908645, at *6 n.4 (Tex. App.—Austin Aug. 29, 2017, no pet.) (mem. op.) (holding that "[t]he division of property presented in the final decree of divorce therefore supplanted the division of property presented in the MSA" when the final decree contained language indicating that the final decree controlled if its terms differed from the parties' MSA).

We sustain this sub-issue.

### 3. Possession & Access Provisions

Next, Michelle complains that the trial court granted Jason more possession and access than what was set forth in the parties' agreement. According to the Rule 11 agreement, "[M.K.M.] will be under a standard possession order[ ]and will have the option to go to dinner at [Jason]'s home on Thursdays at his discretion." The parties did not agree to a specific type of possession schedule involving M.M.M., other than that Jason

would pick her up from school during the week and exercise possession for several hours.

Jason claims that Michelle has waived her complaint regarding the possession and access schedule included in the final decree. The general rules involving preservation of error apply to the entry of Rule 11 agreements. *Tex. Tax Sols. v. City of El Paso*, 593 S.W.3d 903 (Tex. App.—El Paso 2019, no pet.); *see* TEX. R. APP. P. 33.1(a); *Stubbs v. Ortega*, 977 S.W.2d 718, 723 (Tex. App.—Fort Worth 1998, pet. denied); *see also Michelena v. Michelena*, No. 13-13-00036-CV, 2015 WL 525182, at *7 (Tex. App.— Corpus Christi–Edinburg Jan. 8, 2015, pet. denied) (mem. op.). A motion for new trial can preserve these issues for review. *See In re Raffaelli*, 975 S.W.2d 660, 662 (Tex. App.— Texarkana 1998, pet. denied); *see also Duncan v. Hershey*, No. 13-06-00370-CV, 2009 WL 1089437, at *6 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2009, no pet.) (mem. op.). But here, Michelle did not complain that the possession and access schedule did not conform to the parties' Rule 11 agreement until she filed her untimely second amended motion to correct, reform, or modify the final decree on November 1, 2021, more than thirty days after the trial court entered its judgment. *See* TEX. R. CIV. P. 329(b); *Moritz v. Preiss*, 121 S.W.3d 715, 721 (Tex. 2003) (holding that "an untimely amended motion for new trial does not preserve issues for appellate review, even if the trial court considers and denies the untimely motion within its plenary power period").

Citing no authority, Michelle argues in her reply brief that her motion to enter with its attached proposed judgment was sufficient to preserve this issue for our review. We conclude that Michelle's complaint below does not comport with the one made here, and

it was not specific enough to apprise the trial court of the grounds therefor. *See* TEX. R. APP. P. 33.1(a). First, Michelle's motion to enter only alerted the court to the fact that the parties were unable to agree on the content of the final judgment based on their competing interpretations of the Rule 11 agreement's term relating to child support. Second, at the hearing on September 15, Michelle represented to the court that "just one" issue needed resolution: child support. We cannot expect trial courts to comb through competing proposed judgments to spot the differences between them or to modify either judgment, sua sponte, to ensure it comports with each provision of the parties' Rule 11 agreement. If a party believes that a proposed judgment does not comport with the settlement agreement, it is her burden to call the court's attention to the objectionable provisions in a timely and specific manner. *See Ricks v. Ricks*, 169 S.W.3d 523, 527–28 (Tex. App.—Dallas 2005, no pet.); *see also Brantley v. Brantley*, No. 14-11-00583-CV, 2012 WL 727700, at *3 (Tex. App.—Houston [14th Dist.] Mar. 6, 2012, no pet.) (mem. op.). Because Michelle did not timely call the court's attention to this alleged discrepancy, we conclude that Michelle has waived this issue for our review.

We overrule this sub-issue.

### 4.      Place of Exchanges

Michelle cites to no authority supporting her position that the trial court erred by including language requiring Michelle to pick up the children from Jason's residence at the beginning of her periods of possession if she moves out of the county. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions

made, with appropriate citations to authorities and to the record."). The parties' Rule 11 agreement provided that Jason would pick up one of the children from school during the weekdays and would keep her until 6:00 p.m. (except on Thursdays, when he would keep her until 8:00 p.m.). But the parties' agreement provided no details for where exchanges of the children would otherwise occur.

In its findings of fact and conclusions of law, the trial court found "that no evidence was presented . . . to rebut the presumption that the provisions of section 153.316 of the Texas Family Code, General Terms and Conditions of possession, are in the best interest of the children." This section of the family code provides, *inter alia*, that if a conservator moves out of the county that both conservators originally lived in at the time the final judgment was entered, and the other conservator remains in the same county, the conservator that did not move "shall surrender" the children at their own residence to the conservator that did move. *See id.* § 153.316(3)(B)(i). The trial court did not err by including general terms and conditions concerning the location for exchanges of the children to effectuate the parties' agreement. *See Glynn*, 651 S.W.3d at 354–55; *see also In re K.N.M.*, No. 2-08-308-CV, 2009 WL 2196125, at *10 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.) (explaining that the "General Terms and Conditions" in § 153.316 were "statutorily[ ]required" for parties with a standard possession order and thus, did not conflict with the parties' agreement to have a standard possession schedule).

Further, Michelle's proposed decree provided that she would pick up the children from Jason's home for her periods of possession and that he would pick up the children

from her home for his periods of possession regardless of where the parties lived. "A party that asks for a certain type of relief cannot complain on appeal if that relief is granted." *Nesmith v. Burger*, 64 S.W.3d 110, 119 (Tex. App.—Austin 2001, pet. denied). We overrule this sub-issue.

### 5. Child Support Start Date

Again, Michelle cites no authority in support of her position that the trial court erred by setting the child support and medical support start date as October 1, 2021, instead of July 1, 2021. *See* TEX. R. APP. P. 38.1(i). The parties' agreement contains no reference to the date on which child support and medical support would start. In her reply brief, Michelle argues that because judgment was rendered in June of 2021, it was not in the children's best interest for Michelle to forego three months of financial support.[2] While we agree with the basic proposition that it is in a child's best interest to receive financial support, we do not agree that the trial court rendered judgment on June 29, 2021.

The final decree of divorce states that the trial court rendered judgment on June 29, 2021. However, the fact that a trial court believes it rendered judgment on an earlier date "is not dispositive." *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam). "The words used by the trial court must clearly indicate the intent to render judgment at the time the words are expressed." *Id.* At the hearing on June 29, 2021, the trial court told the parties that it was "going to grant the divorce." This language "indicates

---

[2] In the Rule 11 agreement, Jason also agreed to pay some of Michelle's regular monthly bills until July 15, 2021, and to continue providing health insurance for the children indefinitely. Michelle does not allege that Jason failed to comply with these agreements.

16

an intent to approve the divorce settlement, but not a clear intent to render a full, final, and complete judgment." *James v. Hubbard*, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.); *see In re Vaishangi, Inc.*, 442 S.W.3d 256, 259 (Tex. 2014) (orig. proceeding) ("[A] trial court's 'approval of a settlement does not necessarily constitute rendition of judgment,' because rendition of judgment requires a 'present act' to 'decide the issues.'" (quoting *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857–58 (Tex. 1995))); *see Inwood Forest Cmty. Improvement Ass'n v. Arce*, 485 S.W.3d 65, 71–72 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (trial court's oral statements that it was "going to grant the motions to dismiss" were "ineffective because the judge's statements reflect her intent to rule on the . . . motions to dismiss at some point in the future rather than to make a present rendition of judgment").

"Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk." *S & A Rest. Corp.*, 892 S.W.2d at 857. Language indicating a present intent to render judgment on the divorce did not appear until the trial court signed its final decree of divorce, which stated it was a "final judgment" that "disposes of all claims and all parties and is appealable." *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). Thus, despite the trial court's representations to the contrary, we conclude that it did not render judgment until it signed the final decree of divorce on September 27, 2021.[3] This conclusion is supported by the

---

[3] Michelle has never contended that she revoked consent to the Rule 11 agreement prior to the trial court's rendition of judgment, and we will not raise that argument on her behalf. *See Banda*, 955 S.W.2d at 272.

final decree's recital that it was based not only on the Rule 11 agreement and the testimony at the June 28, 2021 hearing, but also on the court's "ruling on the motion to enter decree held on September 15, 2021." Because the parties did not agree on a start date for child support and medical support, it was reasonable for the trial court to order that child support should begin accruing after the date of its order. *See Glynn*, 651 S.W.3d at 354–55.

We overrule this sub-issue.

### 6. Jason's Law Firm

Michelle also argues that the trial court's award of Jason's law firm solely to Jason was error, as it was not included in the parties' agreement. The final decree of divorce awards to Jason:

> The sole proprietorship business known as Jason R. Mann, Attorney at Law, LLC, including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business; and all obligations, debts, accounts payable, or other liabilities associated therewith such business including the SBA loan and the Cameron Life Reinsurance Co. ("Dunkin") note.

Jason argues that this award is consistent with the parties' agreements that "[p]ersonal property will remain in possession of the parties" and that Jason would "indemnify Michelle . . . for the SBA emergency loan, the Dunkin note[,] as well as all other debt and matters related to income tax during the marriage."

"[O]ur primary objective in construing a Rule 11 agreement is to ascertain and give effect to the intentions the parties have objectively manifested in the written

instrument . . . ." *Kanan*, 407 S.W.3d at 332. "Personal property" is not defined by the parties' agreement, nor is it defined by the Texas Family Code. Personal property is generally defined as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *See Property*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Chaisson v. Chaisson*, No. 03-95-00422-CV, 1996 WL 530016, at *2 (Tex. App.—Austin Sept. 18, 1996, writ denied) (mem. op.).

Michelle does not contend that Jason's law firm possesses any real property, and regardless, the final decree of divorce did not award Jason any real property associated with his law firm. It simply awarded him that property which was clearly contemplated by the parties' agreement; specifically, the personal property, whether tangible or intangible, he possessed, and the debts and liabilities he agreed to absorb. *See Property*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Kirk v. Kirk*, No. 03-20-00576-CV, 2022 WL 1591350, at *6 (Tex. App.—Austin May 20, 2022, no pet.) (mem. op.) ("[W]e cannot conclude that the clinic, as a sole proprietorship consisting of equipment and not real property, was . . . not included in the decree's provision awarding Valerie all equipment and other items in her possession."). We conclude that the trial court's award of Jason's law firm in the final decree of divorce was consistent with the parties' Rule 11 agreement.

In her initial brief, citing to no authority, Michelle also argued that "[t]here is no evidence in the record to support inclusion of" Jason's law firm in its division of the community estate. She expanded on this argument in her reply brief by stating that "Jason provided no evidence of [the] value of the [law firm]," and thus, no just and right division

19

of the community estate could be achieved.

The trial court must make a just and right division of the community estate, "regardless of any contrary agreement between the spouses." *See McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied); *see also Sanchez v. Sanchez*, No. 13-07-00207-CV, 2008 WL 3971274, at *2 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2008, no pet.) (mem. op.) ("A trial court has authority to divide the community estate to the extent not set forth in the settlement agreement."). But "[i]n order to determine whether the assets of the community estate were divided in a 'just and right' manner, an appellate court must have the trial court's findings on the value of those assets." *Brown v. Wokocha*, 526 S.W.3d 504, 507 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Here, the trial court did not assign a value to the law firm in its final decree. Although the trial court issued findings of fact and conclusions of law, it did not make any specific finding on the value of Jason's law firm. Michelle had an opportunity to request that the trial court supplement its findings to include such a valuation, but she failed to do so. "Where the original findings omit a finding of a specific ground of recovery which is crucial to the appeal, failure to request an additional finding will constitute waiver." *Howe v. Howe*, 551 S.W.3d 236, 244 (Tex. App.—El Paso 2018, no pet.); *see Alma Invs., Inc. v. Bahia Mar Co-Owners Ass'n*, 999 S.W.2d 820, 822 (Tex. App.—Corpus Christi–Edinburg 1999, pet. denied). Because Michelle failed to request additional findings concerning the trial court's division of the community estate, we conclude that this sub-issue has been waived for our review. *See Howe*, 551 S.W.3d at

244.

In summary, we sustain Michelle's first issue in part as it relates to the amount of child support and the alcohol prohibition provision, and we overrule it in part as it relates to the remaining issues.[4]

### III.    CONCLUSION

Because the final decree of divorce does not comply with the parties' agreement, we must reverse and remand the portion that does not conform for further proceedings consistent with this opinion. *See Snider v. Snider*, 343 S.W.3d 453, 457 (Tex. App.—El Paso 2010, no pet.); *see also Bachus v. Bachus*, No. 13-01-00628-CV, 2002 WL 1965458, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 22, 2002, no pet.) (mem. op.). Thus, on remand, the trial court should revise its decree to conform to the parties' agreements concerning the calculation of child support and alcohol consumption during Jason's periods of possession. However, we affirm the remainder of the trial court's final decree of divorce.


GINA M. BENAVIDES
Justice


Delivered and filed on the
26th day of January, 2023.

---

[4] We need not address Michelle's second issue as we have already addressed all of the issues Michelle raised in her timely motion to correct, reform, or modify the judgment. *See* TEX. R. APP. P. 47.1; *see also Shafer v. Frost Nat'l Bank*, No. 14-06-00673-CV, 2008 WL 2130418, at *9 (Tex. App.—Houston [14th Dist.] May 22, 2008, no pet.) (mem. op.).